**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| LUGENE McCULLOUGH, by and through his guardian ad litem Maya Klein; GINA LAMBERTON, by and through her guardian ad litem Jeffrey Taylor; JOSONIA BISHARA, by and through her guardian ad litem Samond Bishara on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF DEVELOPMENTAL SERVICES, and NANCY BARGMANN, in her official capacity as Director of the California Department of Developmental Services,<br><br>Defendants. | **Case No. 3:20-cv-2958-SI**<br><br>[PROPOSED] **ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFYING SETTLEMENT CLASS, APPROVING NOTICE, AND SETTING DATES FOR FINAL APPROVAL**<br><br>Judge:   Susan Illston |

## I. INTRODUCTION

Before the Court is the Parties' Joint Motion for Preliminary Approval of Class Action Settlement. Plaintiff Lugene McCullough, by and through his guardian *ad litem* Maya Klein, and Plaintiff Josonia Bishara, by and through her guardian *ad litem* Samond Bishara (collectively "Plaintiffs") filed this action in April 2020 alleging that Defendants California Department of Developmental Services ("DDS") and Nancy Bargmann in her official capacity as Director of DDS (collectively "Defendants") were violating federal and state laws by discriminating against Plaintiffs and other deaf consumers[1]. Defendants deny these allegations and do not concede liability. Following extensive negotiations that took place over more than two years with the assistance of Judge Jacqueline Scott Corley, the Parties have reached a proposed Class Settlement Agreement, ECF No. 110-1 at 16–47[2] (the "Agreement"), which is in the best interest of all Parties and satisfies the requirements of Federal Rule of Civil Procedure 23. The Agreement ensures, among other things, that deaf consumers will receive appropriate communication assessments to identify necessary auxiliary aids and services for effective communication in the provision of intellectual and developmental disability ("I/DD") services.

The Parties now ask that the Court enter an order (1) granting preliminary approval of the Agreement; (2) provisionally certifying the proposed Settlement Class and appointing Plaintiffs' attorneys as class counsel, pending final approval; (3) approving the Parties' proposed form of notice and directing notice to the class; and (4) setting deadlines for notice, objections, and a final fairness hearing.

Having presided over the proceedings in the above-captioned action and having reviewed all of the arguments, pleadings, records, and papers on file, this Court finds and orders as follows:

---

[1] "Consumer" refers to an individual who has been found eligible to receive services pursuant to the Lanterman Developmental Disabilities Services Act ("Lanterman Act"). *See* Cal. Welf. & Inst. Code § 4512(a) (defining developmental disability under the Lanterman Act) & § 4512(d) (defining "consumer" as "a person who has a disability that meets the definition of developmental disability set forth in subdivision (a)").

[2] For ECF documents, page number citations refer to the ECF branded number in the upper right-hand corner of the page.

## II. FINDINGS

Plaintiffs allege that Defendants fail to ensure that deaf individuals who qualify for DDS services receive equal access thereto in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. ECF No. 11 (First Am. Compl. ("FAC")). Plaintiffs filed a parallel action in Alameda Superior Court alleging violation of California Government Code section 11135 based on the same factual allegations as alleged in this action. *Compare* ECF No. 110-1 at 51–79 (Plfs.' State Court Compl.) *with* ECF No. 11 at 3–32. Plaintiffs allege that they and thousands of other deaf consumers are systematically denied interpreters and other aids and services that are necessary for effective communication and therefore are denied the benefits of Defendants' program that are available to hearing consumers. ECF No. 11. Defendants expressly deny these allegations and assert that they have always complied with the law and that deaf consumers received the legally required services. ECF No. 39 (Answer).

### A. The Settlement Class meets the requirements of Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure

To grant preliminary approval, the court determines whether the proposed class is proper for settlement purposes, and, if so, preliminarily certifies the class. *Cf. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 166 (N.D. Cal. 2019) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)). To support class certification, a court must find each of Rule 23(a)'s four requirements has been satisfied: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods., Inc.*, 521 U.S. at 614. In addition to these requirements, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Id.* The applicable provision here is subsection (2), which "permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.' " *Id.* (quoting Fed. R. Civ. P. 23(b)(2)).

Here, the proposed class for the purpose of settlement ("Settlement Class") is defined as:

> All persons eligible for services pursuant to the Lanterman Developmental Disabilities Services Act whose response to

question 60 within DDS's "Client Development Evaluation Report (CDER) Diagnostic Element" is "2-Severe hearing loss," "3-Profound hearing loss," or "9-Hearing loss suspected, severity undetermined;" and whose response to question 61 within DDS's CDER Diagnostic Element is "2-Severe hearing loss," "3-Profound hearing loss," "8-Correction not possible," or "9-Hearing not corrected."

Agreement ¶¶ 3, 6, 22.

The Settlement Class is defined slightly differently from the class originally proposed in Plaintiffs' FAC, as it includes a definition of "deafness" based on DDS data. *Compare* Agreement ¶¶ 3, 6, 22 *with* ECF No. 11 at ¶ 17. This modification has the benefit of enabling the parties to clearly identify Settlement Class Members and will not materially impact the class membership or prejudice any class member. The Court finds that this modification to the class definition is appropriate.

In addition, the Court finds that the proposed Settlement Class meets the requirements of Rule 23(a) and Rule 23(b)(2), as discussed below, and it is hereby conditionally certified pending final approval.

### 1. The Settlement Class is Sufficiently Numerous

Rule 23(a) requires that a settlement class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). DDS's data indicates that approximately 10,000 individuals meet the class definition. ECF No. 110-5 at ¶ 6. Joinder of all 10,000 members in a single proceeding would be impracticable, and the Court finds that the proposed Settlement Class is sufficiently numerous.

### 2. The Settlement Class Satisfies Commonality

The second element of Rule 23(a) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied where the plaintiff alleges the existence of "a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The critical question is whether class members have suffered the same injury, such that their claims "depend upon a common

contention . . . [that] is. capable of classwide resolution." *Id.*

Plaintiffs challenged Defendants' alleged state-wide policies and practices that apply to every member of the proposed Settlement Class, including but not limited to: failing to ensure that deaf consumers receive appropriate communication assessment; allowing IPP planning meetings to be conducted without auxiliary aids and services necessary for deaf consumers to communicate effectively; and failing to take any reasonable actions to ensure that California's intellectual and developmental disability ("I/DD") services are accessible to deaf consumers. ECF No. 11 at ¶¶ 61–69, 73–74, 77–89. Each Settlement Class Member is similarly impacted by Defendants' statewide policies and procedures, and the legality of these actions and inactions is a question "capable of classwide resolution." *Wal-Mart*, 564 U.S. at 350.

The Court finds that there are questions of law and fact common to the Settlement Class.

### 3. <u>Plaintiffs' Claims are Typical of the Settlement Class.</u>

The third element of Rule 23(a) requires that the claims of the representative parties are typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). Rule 23(a)'s typicality requirement is met so long as the named plaintiffs' claims are "reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*, 564 U.S. at 338).

Though the extent of their injuries may differ, Plaintiffs allege that every class member is affected by the same challenged course of conduct on the part Defendants. The legal theories that Plaintiffs would have relied on to redress this harm apply equally to each member of the proposed Settlement Class, and the systemic relief Plaintiffs have achieved—like new communications assessment procedures, a statewide Steering Committee, and hiring of an Equity Specialist at the state level and Deaf Services Specialists at the regional level—will benefit that class as a whole.

The Court finds that Plaintiffs' claims are typical of the claims of the Settlement Class that they seek to represent for the purpose of settlement.

4. <u>Plaintiffs and Class Counsel are Adequate Representatives.</u>

The final element of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Settlement Class is adequately represented so long as "the named plaintiffs and their counsel [do not] have any conflicts of interest with other class members, and . . . [will] prosecute the action vigorously on behalf of the class." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000), as amended (June 19, 2000).

Here, Plaintiffs have shown that no conflicts exist between Plaintiffs and other Settlement Class Members. The Parties' Agreement provides the same injunctive relief for Plaintiffs and every member of the proposed Settlement Class; and Plaintiffs have vigorously represented the class and pursued this outcome on behalf of the Settlement Class. Plaintiffs' counsel is experienced in litigating class actions and impact cases involving disability rights violations including other class actions challenging government policies and actions on behalf of individuals who are deaf.

Thus, the Court finds that Plaintiffs McCullough and Bishara, by and through their guardians *ad litem*, have fairly and adequately represented the interest of the Settlement Class and will continue to do so. Accordingly, the Court hereby conditionally appoints Plaintiffs McCullough and Bishara, by and through their guardians *ad litem*, as representatives of the Settlement Class. The Court further conditionally appoints Plaintiffs' counsel, Disability Rights Advocates and Disability Rights California, as Class Counsel.

5. <u>The Settlement Class Satisfies Rule 23(b)(2).</u>

Rule 23(b)(2) requires that the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." This rule is "almost automatically satisfied in actions primarily seeking injunctive relief." *Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 151 (N.D. Cal. 2015) (quoting *Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 520 (N.D. Cal. 2011)).

Here, Plaintiffs challenge DDS policies and practices applicable to all Settlement Class

1  Members and seek injunctive relief. Under the proposed Agreement, every Settlement Class
2  Member will be offered an appropriate communication assessment, have the benefit of new Deaf
3  Services Specialists at their regional centers and at the statewide level, and enjoy increased
4  access to programs including a new housemate matching program. ECF No. 110-1 at 37–40
5  (Implementation Plan §§ B.1, B.2.a, B.2.b, B.3). Furthermore, the Agreement does not release
6  non-party Settlement Class Members' potential claims for monetary damages or their ability to
7  seek individualized relief through the administrative process.
8      The Court finds that the proposed Settlement Class satisfies Rule 23(b)(2). Thus,
9  provisional certification is granted pending final approval.

### B. The proposed Settlement Agreement is Fair, Reasonable, and Adequate

11      At the preliminary approval stage, the Parties must show "that the court will likely be
12  able to" approve their proposed settlement when considering the following factors: (1) whether
13  the class was adequately represented; (2) whether the proposed settlement was negotiated at
14  arm's length; (3) whether the relief provided for the class is adequate, taking into account the
15  costs, risks, and delay of trial and appeal and the terms of any proposed award of attorneys' fees;
16  and (4) whether the proposal treats class members equitably relative to one another.
17  Fed. R. Civ. P. 23(e)(1)(B), 23(e)(2); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th
18  Cir. 2012) (listing *Hanlon* factors considered in the Ninth Circuit). Having considered these
19  factors and examined the settlement process for signs of collusion, as discussed below, the Court
20  finds that final approval is likely. The proposed Agreement is thus preliminarily approved.

21      1. Plaintiffs and their Counsel Have Adequately Represented the Settlement Class.

23      In determining whether a class has been adequately represented, courts consider the same
24  "adequacy of representation" questions that are relevant to class certification. *See In re MyFord
25  Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019 WL 1411510, at *8 (N.D. Cal. Mar. 28,
26  2019); *see also O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2019 WL 1437101, at *6
27  (N.D. Cal. Mar. 29, 2019). Adequate representation of counsel is generally presumed in the
28  absence of contrary evidence. *Californians for Disability Rights, Inc. v. Ca. Dep't of Transp.*,

249 F.R.D. 334, 349 (N.D. Cal. 2008); *see also* William B. Rubenstein, 1 *Newberg and Rubenstein on Class Actions* § 3:55 (6th ed. 2022).

Plaintiffs and their counsel have demonstrated that they do not have any known conflicts of interest with other Settlement Class Members and have vigorously prosecuted the action. Having reviewed the Agreement and all submissions, the Court finds that Plaintiffs and their counsel have adequately represented the Settlement Class and that this factor weighs in favor of preliminary approval.

### 2. The Proposed Settlement was Negotiated at Arm's Length.

The Court finds that the Agreement was negotiated at arm's length. While no presumption of fairness attaches to settlements achieved through arms-length negotiations, *see Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019), such negotiations do weigh in favor of approval.[3] Fed. R. Civ. P. 23(e)(2)(B). The proposed Agreement is the product of over two years of arms' length negotiations, including eight settlement conferences before Judge Corley, numerous settlement meetings between the Parties, and dozens of written proposals exchanged. ECF Nos. 50, 54, 58, 60, 67, 79, 89, 92 (Min. Entries re Settlement Confs.); ECF No. 110-1 at ¶¶ 16–19. As the Advisory Committee has recognized, "the involvement of a neutral or court-affiliated mediator or facilitator . . . may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests." Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2). The Court finds that the Agreement is the product of "serious, informed, non-collusive negotiations" conducted by experienced counsel over an "extended period of time." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079–80 (N.D. Cal. 2007). This factor weighs in favor of preliminary approval.

---

[3] The considerations encompassed by revised Rule 23(e)(b)(2)(A)–(B) "overlap with certain *Hanlon* factors, such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019) (citing *Hanlon*, 150 F.3d at 1026).

### 3. The Proposed Agreement Provides Adequate Relief to Plaintiffs and the Settlement Class

Rule 23(e)(2)(C) requires courts to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payments; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

Here, the Parties have shown that the Agreement fully addresses the issues that led Plaintiffs to file this lawsuit. Deaf consumers will receive appropriate communication assessments, which will ensure that regional center staff and vendors are aware of their abilities, preferences, and need for auxiliary aids and services. New and expanded programs for deaf consumers, including housemate matching, will be given priority for new funding, so that deaf consumers will have more appropriate programs from which to choose. Deaf Services Specialists at every regional center will be available to support the development of new resources, staff training and completion of the communication assessments. DDS will provide training for staff who work with deaf consumers and a new webpage with resources on increasing access for deaf consumers. Once implemented, these changes will resolve the problems that led to the lawsuit.

In deciding whether to agree to this settlement, Plaintiffs considered the possibility that DDS would prevail in the litigation, and the case would end with no benefits to the class. ECF No. 110-1 at ¶¶ 38–40; ECF No. 110-2 at ¶ 16. There is no guarantee that Plaintiffs would prevail, and any litigated result would require significant time and resources for the Court to resolve these disputes. Plaintiffs considered the fact that the settlement provided additional benefits—such as the engagement of regional center representatives in the Steering Committee and the hiring of Deaf Services Specialists at every regional center—that would greatly enhance the prospective relief. ECF No. 110-3 at ¶¶ 15–17; ECF No. 110-4 at ¶¶ 10-14.

Subject to this Court's approval, Defendants have agreed to pay Plaintiffs' counsel $1,300,000 to cover all attorneys' fees and costs, including those incurred for monitoring

implementation of the Agreement. Agreement ¶ 43. This term was negotiated after all substantive settlement terms pertaining to injunctive relief had been resolved, and the total amounts to a significant reduction to Plaintiffs' lodestar.

The Court finds that all relevant factors weigh in favor of preliminary approval.

### 4. The Parties' Agreement Treats All Settlement Class Members Equitably

"The Court must next examine whether the Settlement Agreement provides preferential treatment to any class member." *Uschold*, 333 F.R.D. at 170 (internal quotation and citation omitted). The Court finds that the Agreement will provide the same relief to all Settlement Class Members, and the only distinction between treatment of the Plaintiffs and other Settlement Class Members is that the Plaintiffs will release monetary claims while other Settlement Class Members will not. Because the Proposed Agreement treats Plaintiffs and all other Settlement Class Members equitably relative to each other, the Court finds that this factor weighs in favor of preliminary approval.

### C.  The Parties' Proposed Class Notice is Approved

Notice to a settlement class certified under Rule 23(b)(2) is within the Court's discretion. Fed. R. Civ. P. 23(c)(2)(a), (e)(1). "Notice provided pursuant to Rule 23(e) must 'generally describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.' " *Lane*, 696 F.3d at 826 (alteration in original) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)).

The Court finds that the Parties' proposed form of notice meets this standard and complies with the Northern District's Procedural Guidance For Class Action Settlements. The notice attached as Exhibit B to the Agreement, ECF No. 110-1 at 43–47 ("Class Notice"), apprises Settlement Class Members in a fair and neutral way of the existence of the Agreement and their rights with respect to the Agreement. The Class Notice is written using plain language; will be available in American Sign Language ("ASL"), English, Spanish and other threshold languages; and will be mailed to Settlement Class Members identified using DDS data sources. The Court finds that the distribution of the Class Notice in the manner and form set forth in the Agreement meets the requirements of due process and Federal Rules of Civil Procedure 23(c)(2)

and 23(e) and is the best notice practicable under the circumstances. The Class Notice is thus approved as to form and the Court adopts the Parties' proposed distribution plan. The Parties may make non-substantive changes to this notice—such as to insert dates and times consistent with this Order, as well as website addresses—without further approval from this Court.

### III.    ORDER

NOW THEREFORE, IT IS HEREBY ORDERED:

1. Unless otherwise stated, the terms in this Order have the meaning set forth in the Agreement.

2. The Court hereby conditionally certifies the proposed Settlement Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) as follows:

   a) The Court hereby conditionally appoints Plaintiff Lugene McCullough, by and through his guardian *ad litem*, Maya Klein; and Plaintiff Josonia Bishara, by and through her guardian *ad litem*, Samond Bishara as Settlement Class representatives.

   b) The Court hereby conditionally appoints Disability Rights Advocates and Disability Rights California, Plaintiffs' attorneys of record, as Class Counsel.

3. The Court hereby grants preliminary approval of the terms and conditions contained in the Agreement, attached as Exhibit 1 to the Declaration of Meredith J. Weaver in Support of the Parties' Joint Motion for Preliminary Approval.

4. The Agreement is fair and warrants the dissemination of notice to the Settlement Class Members apprising them of the settlement.

5. The Court hereby approves, as to form and content, the proposed Class Notice, attached as Exhibit B to the Agreement.

6. The Class Notice shall be disseminated to the Settlement Class, substantially in the form attached as Exhibit B to the Agreement, by the following means: Within 60 days of this order, the Parties will provide notice to the Settlement Class by distributing the Class Notice as follows:

    a)   Defendants shall send the Class Notice to all Settlement Class Members by U.S. Mail in English, Spanish, and other threshold languages, as defined by paragraph (3) of subdivision (a) of Section 1810.410 of Title 9 of the California Code of Regulations.

    b)   DDS, Disability Rights California, and Disability Rights Advocates will post the Notice and an ASL translation thereof on their respective websites.

    c)   DDS will make the Notice available in other alternative formats upon request, unless DDS determines that doing so is unduly burdensome.

    d)   DDS will work with Regional Centers to disseminate information to Settlement Class Members related to the Agreement, the process for filing Objections, and the date for the Final Fairness Hearing.

7.     Counsel for both Parties shall submit declarations to the Court as part of the Parties' Motion for Final Approval of the Class Action Settlement confirming compliance with these notice provisions of the Agreement. In addition, if DDS determines that providing the Class Notice in a requested alternative format is unduly burdensome, it will report any such determinations and explain why the request was unduly burdensome.

8.     Any Settlement Class Member or legal representative of a Settlement Class Member who wishes to object to the fairness, reasonableness, or adequacy of the Settlement Agreement, or the fees and costs allocated for Class Counsel must submit an Objection no later than thirty-five days after the date of this Order.

    a)   Objections should include:

        i)   The case name and or number: McCullough v. DDS, Civ. No. 3:20-cv-2958-SI;

        ii)   The Objector's name and Regional Center provider;

        iii)   If the Objection is being submitted by the legal representative of a Settlement Class Member, the name of that legal representative;

        iv)   Whether the Objection applies only to the Objector, to a specific subset of the Settlement Class, or to the entire Settlement Class;

        v)   The specific grounds for the objection; and

        vi) Whether the Objector or their legal representative wishes to speak at the Final Fairness Hearing.

b) Objections must be submitted in one of the following methods:

    i) Written Objections may be submitted in person at the U.S. District Court for the Northern District of California or by U.S. Mail. If submitted by U.S. Mail, Objections must be postmarked no later than thirty days before the fairness hearing. The date of the postmark on the envelope containing the written statement objecting to the Settlement shall be the exclusive means used to determine whether an Objection and/or intention to appear has been timely submitted. In the event a postmark is illegible, the date of the mailing shall be deemed to be five days prior to the date that the copy of the Objection was received.

    ii) Sign language video recordings may be submitted by email to Judge Illston's courtroom deputy. Such recordings will be forwarded jointly to Counsel for DDS and Class Counsel.

9. Settlement Class Members or legal representatives thereof who have submitted a timely objection may also appear to present their objections at the Fairness Hearing. Any Settlement Class Member who fails to timely submit objections shall be deemed to have waived any objections and shall be foreclosed from objecting to the Agreement, unless otherwise ordered by the Court.

10. Class Counsel and counsel for Defendants will respond to any timely filed objections in conjunction with their Motion for Final Approval of the Class Action Settlement.

11. A hearing is appropriate to consider whether this Court should grant final approval of the Settlement Agreement, and to allow adequate time for Settlement Class Members, or their legal representatives, to support or oppose this settlement. The Court will schedule a fairness hearing at least one hundred and twenty-five (125) days from the date of this order.

12. A Fairness Hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to determine whether the Agreement is fair, reasonable, and adequate, and whether it should be finally approved by the Court shall be held before the undersigned on September 15, 2023 at 10:00 a.m. The hearing shall be conducted remotely and may be continued from time to time without further notice.

13. The Parties will file their Joint Motion for Final Approval of Settlement and Plaintiffs will file their Motion for Attorneys' Fees and Costs no later than two weeks before the Fairness Hearing.

14. If for any reason the Court does not grant the Motion for Final Approval of Settlement, the proposed Settlement Agreement and all evidence and proceedings in connection therewith shall be null and void.

15. The Court enjoins all Settlement Class Members from asserting any claims to be released by the Agreement until the date of the Fairness Hearing.

**IT IS SO ORDERED.**

Dated: April 28, 2023

*/s/ Susan Illston*
Honorable Susan Illston
United States District Judge