Melinda Bird, State Bar No. 102236
melinda.bird@disabilityrightsca.org
Emily Ikuta, State Bar No. 315568
emily.ikuta@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
350 S. Bixel Street, Suite 290
Los Angeles, CA 90017
Tel.: (213) 213-8000
Fax: (213) 213-8001

Rebecca Williford, State Bar No. 269977
rwilliford@dralegal.org
Meredith J. Weaver, State Bar No. 299328
mweaver@dralegal.org
DISABILITY RIGHTS ADVOCATES
2001 Center Street, 3rd Floor
Berkeley, CA 94704
Tel: (510) 665-8644
Fax: (510) 665-8511

*Attorneys for Plaintiffs*

(List of Plaintiffs' Counsel continued on next page)

Rob Bonta
Attorney General of California
Charles J. Antonen
Supervising Deputy Attorney General
Ricardo Enriquez
Deputy Attorney General
State Bar No. 233073
  1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone:  (916) 210-7919
Fax:  (916) 324-5567
E-mail:  Ricardo.Enriquez@doj.ca.gov
*Attorneys for Defendants*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LUGENE McCULLOUGH, by and through his guardian ad litem Maya Klein; GINA LAMBERTON, by and through her guardian ad litem Jeffrey Taylor; JOSONIA BISHARA, by and through her guardian ad litem Samond Bishara on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF DEVELOPMENTAL SERVICES, and NANCY BARGMANN, in her official capacity as Director of the California Department of Developmental Services,<br><br>       Defendants. | **Case No. 3:20-cv-2958-SI**<br><br>**JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: September 15, 2023<br>Time:        10:00 a.m.<br>Place:       Remote (Zoom)<br>Judge:     Susan Illston |

1

2

3  William Leiner, State Bar No. 255528
   william.leiner@disabilityrightsca.org
4  S. Lynn Martinez, State Bar No. 164406
   lynn.martinez@disabilityrightsca.org
5  DISABILITY RIGHTS CALIFORNIA
   1330 Broadway, Suite 500
6  Oakland, CA 94612
   Tel.: (510) 267-1200
7  Fax: (510) 267-1201

8  *Attorneys for Plaintiffs*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1

## TABLE OF CONTENTS

2    I.    INTRODUCTION .................................................................................................. 1

3    II.    FACTUAL BACKGROUND ................................................................................ 3

4          A.    Procedural History ................................................................................... 3

5          B.    Material Terms of the Proposed Settlement Agreement ........................... 5

6          C.    The Court Preliminary Approved the Agreement, Notice Has Been
                 Provided, and Two Objections Have Been Received ............................... 9

7                1.    The Parties effectuated notice to the Class. ................................. 9

8                2.    Only two objections have been filed on the record, both by
                       the same individual. ................................................................... 11

9

10   III.   LEGAL STANDARD .......................................................................................... 12

11   IV.    ARGUMENT ....................................................................................................... 13

12         A.    The Court Should Confirm its Initial Finding that the Proposed
                 Settlement Class Meets the Requirements of Federal Rule of Civil
13               Procedure 23(a) and 23(b)(2). ................................................................ 13

                 1.    The Settlement Class is sufficiently numerous. ......................... 13
14
                 2.    The Settlement Class satisfies commonality ............................. 14
15
                 3.    Plaintiffs' claims are typical of the Settlement Class. .............. 15
16
                 4.    Plaintiffs and Class Counsel are Adequate Representatives ...... 16
17
                 5.    The proposed class meets the requirements of Rule
18                     23(b)(2). .................................................................................... 17

19         B.    The Parties' Agreement is Fair, Reasonable, and Adequate and
                 Should be Approved by the Court ........................................................... 18

20               1.    Plaintiffs and their counsel have adequately represented the
                       Settlement Class. ....................................................................... 18
21
                 2.    The Parties' Agreement is the product of arms' length
22                     negotiations. .............................................................................. 19

23               3.    The Agreement will provide exceptional relief to the
                       Settlement Class ........................................................................ 19
24
                 4.    The Parties' Agreement treats all Settlement Class
25                     Members equitably ..................................................................... 22

26   V.     THE OBJECTIONS OF CARL ARGILA ARE NO OBSTACLE TO
            FINAL APPROVAL AND SHOULD BE OVERRULED .................................. 23

27   VI.    CONCLUSION .................................................................................................... 25

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**TABLE OF AUTHORITIES**

**Cases**

*Am. Council of the Blind v. Astrue*, No. C 05-04696 WHA, 2008 WL 4279674 (N.D. Cal. Sept. 11, 2008) ........................................................................... 16

*B.K. by her next friend Tinsley v. Snyder*, 922 F.3d 957 (9th Cir. 2019)........................... 14

*Bakhtiar v. Info. Res., Inc.*, 2021 WL 4472606 (N.D. Cal. Feb. 10, 2021) ...................... 12

*Californians for Disability Rights, Inc. v. Ca. Dep't of Transp.*, 249 F.R.D. 334 (N.D. Cal. 2008) ................................................................................................ 16

*Cancilla v. Ecolab, Inc.*, No. 12-cv-03001-JD, 2016 WL 54113 (N.D. Cal. Jan. 5, 2016) ........................................................................................................... 13

*Cf. Chao v. Emps. Res. Mgmt. Co., Inc.*, No. CV 02-12-S-EJL, 2006 WL 8445477 (D. Idaho Feb. 3, 2006) .................................................................................... 23

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...................................................................... 22

*In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019) ................................................................... 19

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)....................................... 16

*In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019 WL 1411510 (N.D. Cal. Mar. 28, 2019) .............................................................................. 18

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007)............................ 19, 20

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012).................................................... 18

*Miller v. Basic Rsch., LLC*, 750 F.3d 1173 (10th Cir. 2014)........................................... 23

*O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) ................................................................................ 18

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615 (9th Cir. 1982) .................................................................................... 12, 13

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ............................................................. 14, 15, 17

*Rannis v. Recchia*, 380 F. App'x (9th Cir. 2010) .......................................................... 14

*Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035 (9th Cir. 2019)..................................... 19

*Rosado v. Ebay Inc.*, No. 5:12-cv-04005-EJD, 2016 WL 3401987 (N.D. Cal. June 21, 2016)...................................................................................................... 13

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................. 14

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**Federal Rules**

Federal Rule of Civil Procedure, Rule 23(a)(1) ................................................................ 13

Federal Rule of Civil Procedure, Rule 23(a)(2) ................................................................ 14

Federal Rule of Civil Procedure, Rule 23(a)(3) ................................................................ 15

Federal Rule of Civil Procedure, Rule 23(a)(4) ................................................................ 16

Federal Rules of Civil Procedure, Rule 23(e) ................................................................... 12

Federal Rule of Civil Procedure, Rule 23(e)(2) .................................................. 18, 19, 20, 21

**Statutes**

**California Government Code**
   § 11135 ............................................................................................................................. 3

**California Welfare & Institutions Code**

   § 4512 ............................................................................................................................... 1

**United States Code, Title 42**

   § 12131 ............................................................................................................................. 3

   § 12205 ........................................................................................................................... 22

**United States Code, Title 29**

   § 794 ............................................................................................................................ 3, 22

**United States Code, Title 28**

   § 1715 ............................................................................................................................. 10

**Other Authorities**

   U.S. DIST. CT. N. DIST. OF CAL., *Procedural Guidance for Class Action
      Settlements* (Aug. 4, 2022) ............................................................... 11, 20, 23

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES and the COURT: PLEASE TAKE NOTICE THAT on September 15, 2023 at 10:00 a.m., or as soon thereafter as can be heard, Plaintiff Lugene McCullough, by and through his guardian *ad litem* Maya Klein, and Plaintiff Josonia Bishara, by and through her guardian *ad litem* Samond Bishara (collectively "Plaintiffs"); and Defendants California Department of Developmental Services ("DDS") and Nancy Bargmann in her official capacity as Director of DDS (collectively "Defendants") will move the Court for entry of final approval. The hearing on this motion will take place before United States District Judge Susan Illston, and will be conducted via Zoom webinar (the login information for which can be found on the Court's website at https://www.cand.uscourts.gov/judges/illston-susan-si/).

The Parties respectfully request an order: (1) certifying the proposed Settlement Class and appointing Plaintiffs as Settlement Class Representatives and Plaintiffs' counsel as Class Counsel; (2) overruling the Objections submitted by Mr. Carl Argila (ECF Nos. 117 & 118); (3) granting final approval of the Agreement (ECF No. 110-1 at 16–47[1]); and (4) retaining jurisdiction during the term of the Agreement for the purpose of enforcement thereof. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed declarations and exhibits, the full record in this action, and any oral argument presented.

**MEMORANDUM OF POINTS AND AUTHORITIES[2]**

## I.    INTRODUCTION

In April 2020, Plaintiffs filed this action alleging that Defendants were violating federal and state laws by discriminating against deaf consumers[3]. Following extensive negotiations that

---

[1] For ECF documents, page number citations refer to the ECF branded number in the upper right-hand corner of the page.

[2] Nothing in this joint motion should be construed as an admission of liability, or a waiver of any arguments or defenses any party might raise in the future, should final approval not be granted.

[3] "Consumer" refers to an individual who has been found eligible to receive services pursuant to the Lanterman Developmental Disabilities Services Act ("Lanterman Act"). *See* Cal. Welf. & Inst. Code § 4512(a) (defining developmental disability under the Lanterman Act) & § 4512(d)

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    took place over more than two years, the Parties have reached a proposed Class Settlement

2    Agreement (the "Agreement") that includes meaningful procedural requirements to ensure that

3    deaf consumers have effective communication. Among other things, the Agreement will create a

4    working group with membership of key stakeholders to make recommendations regarding DDS

5    policies, services, and training; will result in the hiring of a statewide Equity Specialist, and a

6    regional Deaf Services Specialist at each of the twenty-one regional centers; and will implement

7    a process for assessing the communication skills and needs of deaf consumers. *See* ECF No. 110-

8    1 at 16–47 (Decl. Meredith J. Weaver Supp. Joint Mot. Prelim. Approval ("Weaver PA Decl.")

9    Ex. 1 (Agreement)). Under the Agreement, deaf consumers will receive appropriate

10   communication assessments, which will ensure that regional center staff and vendors are aware

11   of their abilities, preferences, and needs for auxiliary aids and services. Deaf consumers will also

12   have more appropriate programs from which to choose thanks to DDS's commitment to

13   prioritize funding for new and expanded programs for deaf consumers, including housemate

14   matching. New Deaf Services Specialists at every regional center and at the statewide level will

15   be available to support the development of new resources, staff training, and completion of

16   communication assessments. And DDS will provide training for staff who work with deaf

17   consumers and a new webpage with resources on increasing access for deaf consumers.

18          The Court has already conditionally certified the proposed Settlement Class identified in

19   the Agreement; conditionally appointed Plaintiffs as Settlement Class Representatives and

20   Disability Rights Advocates ("DRA") and Disability Rights California ("DRC") as Class

21   Counsel; preliminarily approved the Agreement; and directed notice to the Settlement Class

22   substantially in the form attached as Exhibit B to the Agreement. ECF No. 115 at 11–12. Class

23   Counsel and DDS distributed notice in accordance with the Agreement and this Court's orders.

24   To date, the only objections to the Agreement received by Class Counsel or Counsel for the

25   Defendants are those filed by Objector Carl A. Argila on behalf of his sons Cavan and Gerardo

26   Argila. ECF Nos. 117 & 118. However, those objections are conclusory, unfounded, and based

27

28   (defining "consumer" as "a person who has a disability that meets the definition of
     developmental disability set forth in subdivision (a)").

on misunderstandings of the proposed Agreement as discussed below. Furthermore, DDS is the conservator of Cavan, and for this reason Carl Argila lacks the authority to make an objection on behalf of Cavan. Decl. Lisa Gonzales Supp. Joint Mot. Final Approval ("Gonzales FA Decl.") ¶ 4.

The Agreement is in the best interest of all Parties and satisfies the requirements of Federal Rule of Civil Procedure 23. For these reasons, explained in further detail below, the Parties respectfully request that the Court: (1) certify the proposed Settlement Class and appoint Plaintiffs as Settlement Class Representatives and Plaintiffs' counsel as Class Counsel; (2) overrule the Objections submitted by Mr. Carl Argila, ECF Nos. 117 & 118; (3) grant final approval of the Agreement, ECF No. 110-1 at 16–47; and (4) retain jurisdiction during the term of the Agreement for the purpose of enforcement thereof.

## II.    FACTUAL BACKGROUND

### A.    <u>Procedural History</u>

Plaintiffs filed this putative class action on April 30, 2020, alleging that they and thousands of other deaf consumers are systematically denied interpreters and other aids and services that are necessary for effective communication and therefore are denied the benefits of the program that are available to hearing consumers in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("Title II"); Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"); and California Government Code section 11135 ("Section 11135")[4]. ECF No. 1 (Compl.); ECF No. 11 (First Am. Compl.). Defendants expressly deny these allegations and assert that they have always complied with the law and that deaf consumers received the legally required services. ECF No. 39 (Answer).

Defendants moved to dismiss Plaintiffs' FAC for failure to establish subject matter

---

[4] After Defendants indicated that they would challenge this Court's jurisdiction over Plaintiffs' state law claims, Plaintiffs filed their First Amended Complaint ("FAC") removing Section 11135 claims. ECF No. 11 (FAC); Weaver PA Decl. ¶ 3. Plaintiffs refiled their state claims, based on the same underlying facts as this suit, in state court. Weaver PA Decl. ¶ 4. The Superior Court designated Plaintiffs' case as complex and appointed Maya Klein and Samond Bishara as guardians *ad litem* to represent the interests of Plaintiffs McCullough and Bishara, respectively. Weaver PA Decl. ¶¶ 5–6.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    jurisdiction and for failure to state a claim upon which relief can be granted. ECF No. 23 (Defs'

2    Mot. Dismiss). After full briefing, the Court denied this request in its entirety. ECF No. 38

3    (Order Den. Mot. Dismiss). The Parties also engaged in preliminary discovery including the

4    exchange of initial disclosures and Plaintiffs' service of their first sets of Interrogatories and

5    Requests for Admission on Defendants. Weaver PA Decl. ¶¶ 8–10. In addition, Plaintiffs notified

6    Defendants that they intended to designate Dr. Romy Spitz and Dr. Judy Shepard-Kegl as experts

7    and provided Defendants the experts' joint report containing opinions regarding each Plaintiff's

8    communication abilities and needs. Weaver PA Decl. ¶ 12.

9        Following the Initial Case Management Conference held on September 18, 2020, the

10   Court granted the Parties' joint request that the case be referred to then-Magistrate Judge

11   Jacqueline Scott Corley for a settlement conference. *See* ECF No. 32 at 9 (Joint Case Mgmt.

12   Statement), ECF No. 36 (Order Ref. Mag. J. Settlement). From November 2020 to September

13   2022, the Parties held eight settlement conferences with Judge Corley and at least seven

14   settlement meetings among themselves. ECF Nos. 50, 54, 58, 60, 67, 79, 89, 92 (Min. Entries re

15   Settlement Confs.); Weaver PA Decl. ¶ 17. In addition, the Parties exchanged dozens of

16   proposals in crafting this settlement, including term sheets, remedial plans, and many versions of

17   the Agreement. Weaver PA Decl. ¶ 18. At multiple junctures, the Parties overcame impasse on

18   issues only with the assistance of Judge Corley. *Id.* ¶ 19. The Plaintiffs' guardians *ad litem*

19   participated in many settlement conferences and meetings where substantive terms were

20   negotiated, and provided input throughout the negotiation process. *Id.* ¶ 17; ECF No. 110-3

21   (Klein PA Decl. ¶ 13); ECF No. 110-4 (Bishara PA Decl. ¶ 8). The Parties resolved all other

22   terms of the Agreement prior to Plaintiffs providing their demand for attorneys' fees and costs in

23   September 2022 and spent over four additional months negotiating before reaching agreement on

24   a lump-sum payment of $1,300,000 for all attorneys' fees and costs through the term of the

25   Agreement. Weaver PA Decl. ¶¶ 20, 24; Agreement § III.D.[5]

26

27

28

---

[5] Plaintiffs file separately herewith an Unopposed Motion for Attorneys' Fees & Costs.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

### B.    Material Terms of the Proposed Settlement Agreement

The Agreement defines a single statewide Settlement Class as follows:

> All persons eligible for services pursuant to the Lanterman Developmental Disabilities Services Act whose response to question 60 within DDS's "Client Development Evaluation Report (CDER) Diagnostic Element" is "2-Severe hearing loss," "3-Profound hearing loss," or "9-Hearing loss suspected, severity undetermined;" and whose response to question 61 within DDS's CDER Diagnostic Element is "2-Severe hearing loss," "3-Profound hearing loss," "8-Correction not possible," or "9-Hearing not corrected."

Agreement ¶¶ 3, 6, 22.

The central remedial element of the Agreement is the *Plan to Enhance Services for Individuals Who Are Deaf*, which describes "DDS's phased process for implementation of additional resources to support Settlement Class Members" and includes milestones for various tasks along with target dates for completion. *See* Agreement § III.B & Exhibit A (hereinafter, "Implementation Plan"). The Implementation Plan has 6 elements, discussed in more detail below: (1) creation of a Steering Committee, § A; (2) a process for providing communication assessments for deaf consumers, § B.1; (3) hiring of 22 specialists at the statewide and regional levels to provide leadership, expertise, and support for deaf consumers, § B.2.a–b; (4) prioritization for increasing appropriate service and housing options, § B.3; (5) increasing staff, service provider, and consumer familiarity with and knowledge of effective communication for deaf consumers, § B.2.c–d & § B.4; and (6) data collection and DDS monitoring of regional centers, § B.5.

The Steering Committee has already been convened by DDS and is composed of stakeholders and subject matter experts, including individuals who are Deaf, service providers with experience serving deaf individuals, regional center representatives, and a representative from one of Plaintiffs' counsel, Disability Rights California. Implementation Plan § A.1; Decl. Melinda Bird Supp. Joint Mot. Final Approval ("Bird FA Decl.") ¶ 5 & Ex. A (letter from Committee Member K. Stratton); Gonzales FA Decl. ¶ 5. The Steering Committee will make recommendations to DDS "to advance the quality and depth of services and supports to regional center consumers who are deaf." *Id.* § A. These recommendations will address the remaining

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

elements of the Implementation Plan. *Id.* § A.2. The Steering Committee has met four times to date and discussed topics such as communication assessments, the housemate matching profile, and the content of the DDS website. Gonzales FA Decl. ¶ 5; Bird FA Decl. ¶ 5. One Deaf Committee member who is also the parent of a minor Settlement Class Members states: "Each meeting, our team holds robust discussions, provides constructive feedback to DDS team members, and is highly motivated to achieve measurable outcomes within the parameters of the terms of the settlement." Bird FA Decl. Ex. A (Letter from K. Stratton)

The Implementation Plan sets out a new process for offering deaf consumers assessments of their communication preferences, strengths, and needs. Implementation Plan § B.1. As part of this innovative effort, DDS will retain a contractor to identify and train sufficient assessors to conduct thousands of new assessments. *Id.* § B.1.c. Completed Communication Assessments will be reviewed by each Settlement Class Member's interdisciplinary team at an individual program plan ("IPP") meeting to ensure that the consumer's needs are fully addressed. *Id.* § B.1.d. To facilitate monitoring and accountability, DDS will also modify its contracts with regional centers to include these newly required Communication Assessments. *Id.* § B.1.e. A workgroup of experts has already been formed to identify the latest tools for Deaf Plus individuals. Gonzales FA Decl. ¶ 5. With input from this workgroup, a request for proposal (RFP) will be prepared to retain a contractor to design the assessment tool and provide training for assessors. *Id*. This process is expected to take from six to nine months. *Id*.

The Implementation Plan creates a new position for a statewide Equity Specialist who will participate in the Steering Committee and oversee the remaining elements of the Implementation Plan, including the Communication Assessments, trainings, a new webpage, etc. *Id.* § B.2.a. Although the settlement has not yet been approved, DDS has already filled this position with a widely respected individual with extensive experience, who is Deaf. Winfield PA Decl. ¶ 7; Klein PA Decl. ¶ 17; Bishara PA Decl. ¶ 14. The Implementation Plan also requires each of the state's twenty-one regional centers to hire a Deaf Services Specialist to "support the expansion of deaf service resources, provide training and expertise to regional center staff, and coordinate with DDS on statewide efforts." Implementation Plan § B.2.b. As of August 2023,

sixteen of the twenty-one regional center positions have been filled. Gonzales FA Decl. ¶ 5; *see also* Bird FA Decl. Ex. A (Letter from K. Stratton) ("[T]he Deaf Specialist assigned to our local Regional Center has . . . been exemplary in her role."); Cline Decl. ¶ 8 (discussing presentation by SG/PRC Deaf Specialist).

To address the current shortage of service providers and living situations with staff who can communicate with deaf consumers in sign language or visual-gestural means, the Implementation Plan provides that DDS will give priority to funding requests that address this deficit, with guidelines based on recommendations from the Steering Committee. *Id.* § B.2.b & § B.3. Starting with the 2021-2022 fiscal year, DDS has funded or will fund grants for regional centers to increase language access and competency services that benefit consumers whose primary language is not English (including deaf or hard of hearing). Decl. Leinani Walter Supp. Joint Mot. Final Approval ("Walter FA Decl.") ¶ 6. These grants, which are worth over $14 million, will provide funding to 17 regional centers for these services over the next two fiscal years. *Id.* DDS has also approved projects that are geared exclusively toward deaf and hard of hearing consumers. For example, DDS approved in fiscal year 2021-2022, a project for two regional centers to develop a residential facility for deaf or hard of hearing individuals, to be operated by a service provider who is fluent in ASL. Decl. Tiffani Andrade Supp. Joint Mot. Final Approval ("Andrade FA Decl.") ¶ 4. Also in the 2021-2022 fiscal year, another regional center was approved to develop a supported living services program that works with Deaf or hard of hearing individuals and to offer training courses to direct care professionals in ASL. *Id.* For the fiscal year 2022-2023, DDS approved projects to (1) develop a staffing registry for people who can provide services using ASL, and (2) provide training opportunities to educate staff about communication strategies with those who are deaf and hard of hearing. *Id.*

The Implementation Plan will also create a new, statewide housemate matching service under the oversight of the statewide Equity Specialist, which may be used by Settlement Class Members to specify their preferences for living options and communities including whether they would like to live with other deaf housemates. *Id.* § B.3.d. A draft profile for housemate matching has been developed. Gonzales FA Decl. ¶ 5. Additionally, a workgroup is being

1  formed to gather input from regional center service coordinators and Deaf Specialists, review the

2  draft profile, and implement a housemate matching pilot program. *Id.*

3      Under the Implementation Plan, DDS will also develop trainings for regional center

4  service coordinators, professionals, and paraprofessionals who support Settlement Class

5  Members about the needs of deaf consumers and resources for supporting them. *Id.* § B.2.c–d.

6  The first trainings are scheduled to take place in October and November 2023, addressing Deaf

7  culture and Deaf Plus neurological issues. Gonzales FA Decl. ¶ 5. DDS will set up a webpage

8  dedicated to deaf services that includes these training materials, directives in ASL, FAQs,

9  information on statutory and regulatory requirements, and more. *Id.* § B.4. At the moment, DDS

10  has incorporated resources for Deaf Plus babies on its website. Gonzales FA Decl. ¶ 5. The

11  Steering Committee will make recommendations regarding trainings, the webpage, and

12  appropriate resources. *Id.* § A.2.b.

13      Finally, the Implementation Plan requires DDS to collect and review data regarding the

14  assessment process and monitor regional center compliance with the new requirements.

15  Implementation Plan § B.5. DDS will also send a reminder to regional centers of their

16  obligations under the Americans with Disabilities Act ("ADA") and guidance on effective

17  communication from the U.S. Department of Justice. *Id.* § B.5.c.

18      The Agreement includes procedural requirements that will benefit Settlement Class

19  Members. The Agreement provides that the Parties will jointly ask the Court to retain

20  jurisdiction to ensure compliance with the Agreement until it terminates. Agreement ¶ 64.

21  Termination will occur one year after the completion of essential provisions of the

22  Implementation Plan, the latest of which are estimated to occur between December 1, 2023 and

23  February 29, 2024. *Id.* ¶ 44; Implementation Plan § B.1.d & § B.1.e. Thus, court jurisdiction will

24  likely extend at least through December 2024 and possibly later if DDS requires additional time

25  to satisfy the requirements of the Implementation Plan.

26      Regarding monitoring, the Agreement requires DDS to provide progress and data reports

27  twice per year and be available to meet to discuss these reports. Agreement ¶¶ 40–41. The

28  Parties may also meet at other times by mutual consent to discuss implementation efforts. *Id.*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

¶ 42. If disputes develop, the Agreement provides that the Parties will first provide written notice and meet to attempt to resolve the dispute. *Id.* ¶ 66. If the Parties cannot resolve their dispute, they will request a conference with Judge Corley. *Id.* ¶¶ 67–68. If this is unsuccessful, an enforcement motion may be filed thirty days after the conference. *Id.* ¶ 69.

The Agreement includes a reasonable release of claims as to DDS, and as to its agents and contractors. Agreement ¶¶ 21, 45–46. The release is limited to claims under Title II, Section 504, and Section 11135 that arise out of the allegations in the federal and state complaints up to the date of the Court's final approval order. *Id.* ¶ 21 (definition of Released Claims), ¶ 8 (definition of Effective Date of Settlement). Furthermore, non-party Settlement Class Members do not release any claims for damages. *Id.* ¶ 21. In addition, non-party Settlement Class Members may still pursue individual claims regarding the provision of services, subject to the pre-existing requirement in state law that they have exhausted the claim through the administrative hearing process. *Id.*

**C.**    **The Court Preliminary Approved the Agreement, Notice Has Been Provided, and Two Objections Have Been Received**

On March 30, 2023, the Parties filed a joint motion for preliminary approval of the Agreement. ECF No. 110 (Joint Mot. Prelim. Approval). On April 28, the Court (a) conditionally certified the Settlement Class, appointed Plaintiffs as Settlement Class representatives, and appointed Disability Rights Advocates and Disability Rights California as Class Counsel; (b) granted preliminary approval of the terms and conditions contained in the Agreement; (c) found that the proposed Agreement is fair and warranted the dissemination of notice to the Settlement Class; (d) approved the proposed Class Notice; (e) approved the plan for providing notice to the Settlement Class; and (f) scheduled a Fairness Hearing for September 15, 2023. ECF No. 115 at 11–14 (Order Granting Prelim. Approval).

**1.**    The Parties effectuated notice to the Class.

DRA and DRC created and have maintained Class Notice websites available at https://dralegal.org/class-notice/california-department-of-developmental-services/ and https://www.disabilityrightsca.org/cases/mccullough-v-california-department-of-developmental-

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

services-class-action, respectively.[6] Decl. Meredith J. Weaver Supp. Joint Mot. Final Approval ("Weaver FA Decl.") ¶ 4; Bird Decl. ¶ 3. From at least June 27, 2023 to the present, the following documents have been available on Class Counsel's Class Notice websites: English, Spanish, and ASL versions of the Class Notice; the proposed Agreement; the Parties' joint motion for preliminary approval; and the Court's Order Granting Preliminary Approval. Weaver FA Decl. ¶ 4–6; Bird FA Decl. ¶¶ 3–4.

On June 26, 2023, DDS mailed the Class Notice to class members in English and Spanish. Decl. Kristy Boyes Supp. Joint Mot. Final Approval ("Boyes FA Decl.") ¶ 5. As of August 31, 2023, no notices have been returned undeliverable to DDS. *Id*. Additionally, DDS staff spoke to regional center regarding disseminating information included in the Class Notice. *Id*. at ¶ 6. Due to inadvertence, however, DDS did not post the notice on its website. *Id*. at ¶ 7. In addition to mailing the Class Notice to all class members, the contents of the Class Notice and the requirements for filing an objection were explained to the three class members who are conserved by the Director of DDS. Gonzales FA Decl. ¶ 4. Lisa Gonzales, the DDS Statewide Deaf Access Specialist, undertook these efforts by personally visiting each of the three conserved class members. *Id*. The support staff of each conserved individual, a representative from DDS's Conservatorship Liaison, and a representative from the State Council on Developmental Disabilities also attended. *Id*. During each visit, the video version of the Class Notice produced in ASL was shown to the conserved class members. *Id*. Communication supports were provided to ensure effective communication with the conserved class members and to determine if they wished to object to the settlement. *Id*. During the in-person explanations, none of the conserved class members expressed any objection to the settlement. *Id*. [7] While DDS did not post the Class Notice to its website, however, between Class Counsel's websites and DDS mailing the Class

---

[6] These URLs were included in the Class Notice itself as resources for more information. *See* Weaver FA Decl. ¶ 4 & Ex. A (Class Notice).

[7] In addition, on April 4 and 5, 2023, DDS's counsel sent a notice to the Attorney General of the United States; the General Counsel for the California Health & Human Services Agency, which is the agency that oversees DDS in compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715; and the Attorney General of California. ECF No. 112 at 2 (Decl. Ricardo Enriquez Supp. Defs' CAFA Notice ¶ 4).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  Notice to all Settlement Class Members identified in DDS's records, Settlement Class Members

2  received sufficient notice in a manner and form that meets the requirements of due process and

3  Federal Rules of Civil Procedure 23(c)(2) and 23(e).

4      The Class Notice lists addresses and phone numbers for Class Counsel so that Settlement

5  Class Members could inquire about the lawsuit or Agreement. *See* Weaver FA Decl. Ex. A

6  (Class Notice). As of this filing, Class Counsel have received calls or emails from eight

7  Settlement Class Members or their advocates requesting additional information.[8] *Id.* ¶¶ 8–9.

8  Most callers sought clarification as to how the settlement agreement would impact them. Weaver

9  FA Decl. ¶ 9(c)–(f); Decl. Emily Ikuta Supp. Joint Mot. Final Approval ("Ikuta FA Decl.") ¶ 3;

10  Decl. Carol Medina Supp. Joint Mot. Final Approval ("Medina Decl.") ¶ 4; Decl. Renée Cline

11  Supp. Joint Mot. Final Approval ("Cline Decl.") ¶¶ 4–7. Some expressed the importance of the

12  settlement and noted that they had already seen changes at their regional centers. Cline Decl.

13  ¶ 7–10; Medina Decl. ¶ 5.

14      2.    Only two objections have been filed on the record, both by the same individual.

15  The deadline for mailing objections to the Court was August 16, 2023.[9] As of this filing,

16  only two objections have been filed on the record,[10] both of which were submitted by Carl A.

17  Argila purportedly on behalf of his adult sons Cavan Argila and Gerardo Argila who are

18  Settlement Class Members. ECF Nos. 117 & 118. Carl Argila represents that he is the

19  conservator for Gerardo Argila, but is not the conservator or legal representative for Cavan

20  Argila. Cavan Argila is conserved by the Director of DDS. Gonzales Decl. FA ¶ 4. DDS has

21  explained the terms of the settlement to Cavan who expressed no objection to the settlement

---

[8] Class Counsel also received calls from two individuals who had received the Class Notice mailed by Defendants but reported not being Settlement Class Members. Weaver FA Decl. ¶ 9(a)–(b).

[9] Settlement Class Members had 50 days to object between the Class Notice deadline (June 27, 2023) and the Objection deadline (August 16, 2023), thus the Notice Period complied with this District's *Procedural Guidance for Class Action Settlements*.

[10] The Parties explain their response to Mr. Argila's first objections in Section V, *infra*, however as discussed herein, since the second objection provided no specific grounds the Parties are unable to respond to them.

1    when it was explained to him. *Id.*

2            On July 17, 2023, Carl Argila objected regarding: (1) DDS's denial of liability;

3    (2) DDS's capability of fulfilling the Agreement's obligations; (3) Class Counsel as monitors;

4    (4) payment of DRC's attorneys' fees and costs; and (5) the lack of monetary damages. ECF No.

5    117. On August 15, Class Counsel sent Carl Argila correspondence explaining several aspects of

6    the proposed Agreement that seemed to be misunderstood based on the July 17 objection and

7    welcomed him to reach out directly if he had questions, however he did not do so. Weaver FA

8    Decl. ¶ 10 & Ex. C (Letter to C. Argila).

9            On August 14, 2023, Carl Argila submitted a second objection on his sons' behalf,

10   however no specific objections are included as to either son. ECF No. 118. Thus, it is not

11   possible for the Parties to respond. With respect to Cavan Argila, the objection states: "Cavan's

12   response [to the settlement] was 'it is not fair to the Deaf.' Cavan decided to object to the

13   Settlement. Cavan's preference was documented in an e-mail to attorney Mary O'Neill on

14   8/6/2023." ECF No. 118. Class Counsel reached out to Ms. O'Neill in an attempt to better

15   understand Cavan Argila's objection; she responded that she has not spoken to Cavan Argila on

16   this subject and that objecting to the Agreement is beyond the scope of her assignment as his

17   counsel. Weaver FA Decl. ¶ 11. Also, as Cavan's conservator, it is DDS's position that only the

18   DDS Director has the authority to lodge an objection on Cavan's behalf, not Carl Argila.

19   Gonzales Decl. FA ¶ 4.

20   **III.    LEGAL STANDARD**

21           "Settlement [is] the preferred means of dispute resolution[,] especially . . . in complex

22   class action litigation." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,

23   688 F.2d 615, 625 (9th Cir. 1982). Under Rule 23(e) of the Federal Rules of Civil Procedure, a

24   class action settlement that is binding on absent class members requires court approval. Fed. R.

25   Civ. P. 23(e). Approval is a two-step process: (1) preliminary approval of the settlement and (2)

26   after a notice period, final determination that the settlement is fair, reasonable, and adequate. *See*

27   *Bakhtiar v. Info. Res., Inc.*, No. 17-cv-04559-JST, 2021 WL 4472606, at *5–6 (N.D. Cal. Feb.

28   10, 2021).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

At final approval, the Court first "determines that notice to the class members was accomplished in the manner prescribed by the settlement and as approved by the Court at the preliminary approval stage." *Cancilla v. Ecolab, Inc.*, No. 12-cv-03001-JD, 2016 WL 54113, at *3 (N.D. Cal. Jan. 5, 2016). The Court then analyzes whether it should confirm final certification of any class preliminarily certified for settlement. *Rosado v. Ebay Inc.*, No. 5:12-cv-04005-EJD, 2016 WL 3401987, at *1–2 (N.D. Cal. June 21, 2016). Finally, "[h]aving already completed a preliminary examination of the agreement, the court reviews it again, mindful that the law favors the compromise and settlement of class action suits." *Id.* (citing *Churchill Village. LLC v. Gen. Elec.*, 361 F.3d 566,576 (9th Cir. 2004)). The Court should "reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Just.*, 688 F.2d at 625. Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

## IV.    ARGUMENT

### A.    The Court Should Confirm its Initial Finding that the Proposed Settlement Class Meets the Requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(2).

The Parties stipulated to seek certification of the Settlement Class described above. Section II.B, *supra*. The Court previously determined that each of the requirements of Rule 23(a) and 23(b)(2) for class certification are satisfied for the purposes of the proposed Agreement and Settlement Class. *See* ECF No. 115 at 3–7. The Settlement Class is properly certified at this time consistent with the Court's prior analysis.

#### 1.    The Settlement Class is sufficiently numerous.

The first element of Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While Rule 23(a)'s numerosity requirement "is not tied to any fixed numerical threshold," courts generally find that classes of 40 or more

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA, 94704-1204
(510) 665-8644

1   members satisfy the requirement—and sometimes even fewer. *Rannis v. Recchia*, 380 F. App'x

2   646, 651–52 (9th Cir. 2010) (discussing standard and affirming certification of 20-member

3   class). The numerosity requirement is satisfied here, where Defendants' data indicate that

4   approximately 10,000 individuals meet the class definition. Winfield PA Decl. ¶ 6. The Court

5   should therefore confirm its finding that the Settlement Class is sufficiently numerous.

6                    2.    <u>The Settlement Class satisfies commonality.</u>

7           The second element of Rule 23(a) requires the existence of "questions of law or fact

8   common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied where the plaintiff

9   alleges the existence of "a common contention" such that "determination of its truth or falsity

10  will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-*

11  *Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

12          Plaintiffs challenge Defendants' alleged state-wide policies and practices that apply to

13  every member of the Settlement Class, including but not limited to: failing to ensure that deaf

14  consumers receive appropriate communication assessment; allowing IPP planning meetings to be

15  conducted without auxiliary aids and services necessary for deaf consumers to communicate

16  effectively; and failing to take any reasonable actions to ensure that California's intellectual and

17  developmental disability ("I/DD") services are accessible to deaf consumers. FAC ¶¶ 61–69, 73–

18  74, 77–89. The legality of these actions and inactions is a question capable of classwide

19  resolution, and where a lawsuit seeks a determination regarding "systemic policies and practices"

20  that affect all of the putative class members—as this case does—Rule 23(a)'s commonality

21  requirement is met. *See Parsons v. Ryan*, 754 F.3d 657, 681–82 (9th Cir. 2014) (discussing

22  cases); *see also B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 969 (9th Cir. 2019) (affirming

23  district court's commonality determination and noting that systemic "statewide policies and

24  practices [were] the 'glue' " holding together the putative class).

25          Insofar as Settlement Class Members differ in their access needs or in the extent to which

26  they may have been harmed by DDS policies, these dissimilarities do not impede classwide

27  resolution. *See Wal-Mart*, 564 U.S. at 350. Where plaintiffs challenge "a deficient government

28  policy or program, not [an] individual harm," no individualized inquiry is necessary. *Smith v.*

*City of Oakland*, 339 F.R.D. 131, 140–41 (N.D. Cal. 2021). Here, Plaintiffs' central claim is not that they were individually denied access to specific services, but that they were excluded from full participation because of their deafness—a question common to all Settlement Class Members. Indeed, Plaintiffs sought and achieved not individualized relief but systemic reforms, like new communications assessment procedures, a statewide Steering Committee, and hiring of an Equity Specialist at the state level and Deaf Services Specialists at the regional level, which benefit all class members. *See* § II.B, *supra* (discussing relief provided by Agreement). The Court should thus confirm its finding that the Settlement Class satisfies Rule 23(a)'s commonality requirement.

3.    Plaintiffs' claims are typical of the Settlement Class.

The third element of Rule 23(a) requires that the claims of the representative parties are typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). Rule 23(a)'s typicality requirement is met so long as the named plaintiffs' claims are "reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons*, 754 F.3d at 685 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*, 564 U.S. at 338). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' " *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Plaintiffs allege injuries attributable to the same alleged course of conduct: Defendants' failure to ensure that deaf consumers receive effective communication and meaningful access to the benefits of California's I/DD service program. *See, e.g.*, FAC ¶¶ 61–69, 73–74, 77–89. Though the extent of their injuries may differ, Plaintiffs allege that *every* class member is affected by this same course of conduct. The legal theories that Plaintiffs would have relied on to redress this harm apply equally to each Settlement Class Member, and the relief Plaintiffs have achieved will benefit that class as a whole. The Court should thus confirm its finding that the Settlement Class satisfies Rule 23(a)'s typicality requirement.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

4.    <u>Plaintiffs and Class Counsel are Adequate Representatives.</u>

The final element of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The class is adequately represented if "the named plaintiffs and their counsel [do not] have any conflicts of interest with other class members, and . . . [will] prosecute the action vigorously on behalf of the class." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000), as amended (June 19, 2000).

As set forth by the declarations previously submitted in connection with preliminary approval, there are no conflicts between Plaintiffs and other Settlement Class Members. *See* Klein PA Decl. ¶¶ 11–12, ECF No. 110-3; Bishara PA Decl. ¶¶ 6–7, ECF No. 110-4. Plaintiffs McCullough and Bishara are impacted by Defendants' systemwide policies and practices challenged in this case. FAC ¶¶ 95–125, 171–207. Plaintiffs sought only injunctive and declaratory relief to make California's I/DD services equally available to deaf consumers—relief structured to benefit the class as a whole. *Id.* ¶¶ 25, 246–47; *see also Am. Council of the Blind v. Astrue*, No. C 05-04696 WHA, 2008 WL 4279674, at *6 (N.D. Cal. Sept. 11, 2008) (stating that where plaintiffs do not seek monetary damages, "[t]he potential for any conflict or collusion is . . . minimal"). Furthermore, the Agreement provides the same injunctive relief for Plaintiffs and every Settlement Class Member. *See* § II.B, *supra* (discussing relief provided by Agreement).

In addition, Plaintiffs, through their guardians *ad litem*, have vigorously represented the class and pursued this outcome on behalf of the Settlement Class. Klein PA Decl. ¶¶ 12–14; Bishara PA Decl. ¶¶ 5–6, 8–9. Ms. Klein and Mr. Bishara have knowledge of the case and their duties as class representatives and have reviewed and support the Agreement. Klein PA Decl. ¶¶ 12–16; Bishara PA Decl. ¶¶ 6–13.

Similarly, Class Counsel has no known conflicts of interests with any Settlement Class Member and has acted vigorously on behalf of the Settlement Class, through both litigation and arms' length settlement negotiations. Adequate representation of counsel is generally presumed in the absence of contrary evidence. *Californians for Disability Rights, Inc. v. Ca. Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008). Counsel may demonstrate their qualifications with previous experience litigating class action lawsuits. *See Hanlon*, 150 F.3d at 1021. In this

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

case, Class Counsel have extensive experience litigating class action suits, including other similar class actions challenging governmental policies. Weaver PA Decl. ¶¶ 27–35; ECF No. 110-2 at 4–8 (Bird PA Decl. ¶¶ 5–11).

Class Counsel thoroughly investigated the claims, defeated Defendants' motion to dismiss, retained experts to prepare detailed reports, and spent over two years engaging in negotiations to reach this Agreement. Weaver PA Decl. ¶¶ 12–20; Bird PA Decl. ¶¶ 3–4; ECF No. 38 (Order Den. Mot. Dismiss). In addition, Class Counsel properly refused to negotiate attorneys' fees and costs until after reaching an agreement with Defendants on all other aspects of the settlement, in order to avoid even the appearance of conflict between the interests of counsel and the interests of the Settlement Class. Weaver PA Decl. ¶ 20.

Based on Class Counsel's experience litigating novel and complex cases against public entities, they have determined that the injunctive terms and other provisions contained in the Agreement will adequately protect the rights of Plaintiffs and the Settlement Class that this case sought to vindicate. Weaver PA Decl. ¶¶ 37–40; Bird PA Decl. ¶¶ 14–16. Moreover, Class Counsel are well-aware that attempting to reach a resolution through additional litigation could have taken years and might not have yielded a resolution as favorable as that contained in the proposed Agreement. Weaver PA Decl. ¶¶ 21, 37–40; Bird PA Decl. ¶¶ 14–16. The Court should confirm its finding that Rule 23(a)(4)'s adequacy requirement is met.

### 5. The proposed class meets the requirements of Rule 23(b)(2).

Rule 23(b)(2) requires that the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "[T]he primary role of this provision has always been the certification of civil rights class actions." *Parsons*, 754 F.3d at 686. The rule is "almost automatically satisfied in actions primarily seeking injunctive relief." *Hernandez*, 305 F.R.D. at 151 (quoting *Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 520 (N.D. Cal. 2011)).

Here, Plaintiffs challenge DDS policies and practices applicable to all Settlement Class Members and seek injunctive relief. The proposed Agreement will benefit all Settlement Class

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

Members. Among other improvements, every Settlement Class Member will be offered an appropriate communication assessment, have the benefit of new Deaf Services Specialists at their regional centers and at the statewide level, and enjoy increased access to programs including a new housemate matching program. Implementation Plan §§ B.1, B.2.a, B.2.b, B.3. Furthermore, the Agreement does not release non-party Settlement Class Members' potential claims for monetary damages or their ability to seek individualized relief through the administrative process. The Settlement Class meets all requirements of Rule 23(a) and (b)(2) and should be certified.

**B.**    **The Parties' Agreement is Fair, Reasonable, and Adequate and Should be Approved by the Court**

In making a final fairness determination, Rule 23 requires courts to consider: (1) whether the class was adequately represented; (2) whether the proposed settlement was negotiated at arm's length; (3) whether the relief provided for the class is adequate, taking into account, in relevant part, the costs, risks, and delay of trial and appeal and the terms of any proposed award of attorneys' fees; and (4) whether the proposal treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (listing *Hanlon* factors considered in the Ninth Circuit).

1.    Plaintiffs and their counsel have adequately represented the Settlement Class.

In determining whether a class has been adequately represented, courts consider the same "adequacy of representation" questions that are relevant to class certification. *See In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019 WL 1411510, at *8 (N.D. Cal. Mar. 28, 2019); *see also O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2019 WL 1437101, at *6 (N.D. Cal. Mar. 29, 2019). As discussed above in § IV.A.4, this requirement is satisfied. Class Counsel engaged in extensive investigation and advocacy prior to filing suit, Class Counsel and Plaintiffs vigorously prosecuted the action, and Plaintiffs, through their guardians *ad litem*, have been engaged and involved in this matter to represent the interests of the class. Bird PA Decl. ¶¶ 3–4; Weaver PA Decl. ¶¶ 8–15, 17; ECF No. 38 (Order Den. Mot. Dismiss); Klein PA Decl.

¶ 13; Bishara PA Decl. ¶ 8. Thus, the Court should find that this Rule 23(e)(2) factor weighs in favor of approval.

### 2. The Parties' Agreement is the product of arms' length negotiations.

The Parties' proposed Agreement is the product of over two years of arms' length negotiations, including eight settlement conferences before Judge Corley, numerous settlement meetings between the parties, and dozens of written proposals exchanged. ECF Nos. 50, 54, 58, 60, 67, 79, 89, 92 (Min. Entries re Settlement Confs.); Weaver PA Decl. ¶¶ 16–19. While no presumption of fairness attaches to settlements achieved through arms-length negotiations, *see Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019), such negotiations do weigh in favor of approval.[11] Fed. R. Civ. P. 23(e)(2)(B). And, as the Advisory Committee has recognized, "the involvement of a neutral or court-affiliated mediator or facilitator . . . may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests." Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2). Where, as here, an agreement is the product of "serious, informed, non-collusive negotiations" conducted by experienced counsel over an "extended period of time," courts routinely find that preliminary approval is appropriate. *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079–80 (N.D. Cal. 2007). Furthermore, Class Counsel refused to negotiate attorneys' fees and costs until agreement was reached on the remainder of the settlement. Weaver PA Decl. ¶ 20. The Court should find that this Rule 23(e)(2) factor weighs in favor of approval.

### 3. The Agreement will provide exceptional relief to the Settlement Class

The third factor requires courts to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

---

[11] The considerations encompassed by the revised Rule 23(e)(b)(2)(A)–(B) "overlap with certain *Hanlon* factors, such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019) (citing *Hanlon*, 150 F.3d at 1026).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

including timing of payments; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). In determining whether the Agreement "falls within the range of possible approval," the Court must focus on "substantive fairness and adequacy" and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080 (citations omitted).

Here, the settlement fully addresses the issues that led Plaintiffs to file this lawsuit. Plaintiffs were living in three different group homes with staff who could not communicate with them using sign language, and participated in day programs that also had no signing staff. FAC ¶¶ 104–09, 145–46, 153, 164–67, 180–86, 196, 200. Although all preferred to communicate with sign language, the staff from the regional center, their group homes, and their day programs all attempted to communicate using written notes, without regard to their preference or actual ability. *Id.* ¶¶ 110–16, 130, 140–44, 178–82, 188, 193. One Plaintiff wished to move to a home with other deaf residents; once she was provided an interpreter and could communicate this to her regional center, she was told none were available. *Id.* ¶¶ 159–63. Regional Center staff were unaware of the importance of videophones as an accommodation for deaf residents and failed to ensure that this accommodation was available to the Plaintiffs. *Id.* ¶¶ 125, 156, 198. Neither the regional centers nor their group home staff arranged for interpreters for their medical care, so they were unable to communicate their medical needs, understand their treatment or ask questions. *Id.* ¶¶ 124, 157–58, 199.

The Agreement and Implementation Plan address all these issues. Deaf consumers will be offered appropriate communication assessments, which will ensure that regional center staff and vendors are aware of their abilities, preferences, and need for auxiliary aids and services. New and expanded programs for deaf consumers, including housemate matching, will be given priority for new funding, so that deaf consumers will have more appropriate programs from which to choose. Deaf Services Specialists at every regional center will be available to support the development of new resources, staff training and completion of the communication assessments. DDS will provide training for staff who work with deaf consumers and a new webpage with resources on increasing access for deaf consumers. Once implemented, these

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

changes will resolve the problems that led to the lawsuit.

>    **a.    The potential costs, risks, and delays associated with trial and appeal weigh in favor of approval.**

In considering "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon*, 150 F.3d at 1026.

In deciding whether to agree to this settlement, Plaintiffs were required to, and did, consider the possibility that DDS would prevail in the litigation, and the case would end with no benefits to the class. Weaver PA Decl. ¶¶ 38–40; Bird PA Decl. ¶ 16. DDS has argued that it is not responsible for the actions of the regional centers or their vendors who provide services directly to the Settlement Class. DDS argued that the issue of appropriate accommodations for each class member was so individualized as to defeat class certification. DDS also contended that it was up to the consumer's IPP team, not DDS, to offer any appropriate assessments.

On the other hand, Plaintiffs contend that under the ADA and its implementing regulations, DDS is required to ensure that the benefits of its program are available to deaf consumers and that its operations, as well as those of its contractors, do not discriminate on the basis of disability. Thus, Plaintiffs contend that DDS is responsible for the failure of regional centers and their vendors to provide effective communication to deaf consumers. Plaintiffs amassed extensive evidence demonstrating deaf consumers' exclusion from meaningful participation in California's I/DD services program and from the opportunity to benefit from decision making about their own services because of the lack of sign interpreters. Plaintiffs were also prepared to show that class certification was appropriate.

Nevertheless, there is no guarantee that Plaintiffs would prevail, and any litigated result would require significant time and resources for the Court to resolve these disputes. Plaintiffs considered the fact that the settlement provided additional benefits—such as the engagement of regional center representatives in the Steering Committee and the hiring of Deaf Services Specialists at every regional center—that would greatly enhance the prospective relief. Klein PA

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

Decl. ¶¶ 15–17; Bishara PA Decl. ¶¶ 10–14. The Steering Committee, which includes subject matter experts, will also make recommendations to DDS regarding a consistent set of procedures, tools, and materials for communication assessments and recruitment for assessors. Implementation Plan § A. This and other relief included in the Agreement might not otherwise be available from a court, even if Plaintiffs were to prevail.

Based on these factors, Plaintiffs made a considered decision that this settlement is in the best interests of the Settlement Class. Klein PA Decl. ¶ 14; Bishara PA Decl. ¶ 9.

> **b.  *The terms of the Parties' proposed attorneys' fee award also weigh in favor of approval.***

The statutes at issue in this action allow prevailing plaintiffs to recover their reasonable fees and costs. *See* 42 U.S.C. § 12205 (ADA); 29 U.S.C. § 794a(b) (Section 504). Subject to this Court's approval, Defendants have agreed to pay Class Counsel $1,300,000 to cover all attorneys' fees and costs, including those incurred for monitoring implementation of the Agreement. Agreement ¶ 43. This term was negotiated after all substantive settlement terms pertaining to injunctive relief had been resolved. Weaver PA Decl. ¶ 20. Plaintiffs' Unopposed Motion for Award of Attorneys' Fees and Costs discusses the reasonableness of Class Counsel's lodestar and the significant reduction to that lodestar to which Plaintiffs agreed in the interests of settling this case. ECF No. 119.

The excellent result Plaintiffs have achieved on behalf of the proposed Settlement Class—as discussed in § II.C, above—weighs heavily in favor of finding that their fee award is reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 435–436 (1983) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . . [T]he most critical factor [to the reasonableness of an attorney fee award] is the degree of success obtained."). Thus, the Court should find that the terms of the Parties' proposed fee award weigh in favor of approval.

> 4.  The Parties' Agreement treats all Settlement Class Members equitably.

"The Court must next examine whether the Settlement Agreement provides preferential treatment to any class member." *Uschold*, 333 F.R.D. at 170 (internal quotation and citation

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

omitted). Here, all Settlement Class Members will be treated equitably and will receive the same benefits in the form of injunctive relief. Agreement § III. Furthermore, non-party Settlement Class Members will not release any potential claims for monetary damages or for individualized services. Agreement ¶ 21, 45–46. The Plaintiffs will not receive an incentive payment or any benefits that are not afforded to non-party Settlement Class Members. *See* Agreement.

## V.    THE OBJECTIONS OF CARL ARGILA ARE NO OBSTACLE TO FINAL APPROVAL AND SHOULD BE OVERRULED

As discussed in Section II.C.2, *supra*, the only objections to the Agreement were filed by Mr. Carl Argila on behalf of his two adult sons who are Deaf. Mr. Argila raised five points in support of his objection on behalf of his son Gerardo Argila, for whom he is a conservator. As a threshold matter, as also discussed in Section II.C.2, *supra*, Mr. Argila is only the conservator for Gerardo. Thus, Mr. Argila lacks the authority to lodge objections on behalf of his other son, Cavan, whose conservator is the Director of DDS.

First, Mr. Argila objects to DDS's denial of liability. ECF No. 117 at 1–2. This is not a valid reason to reject this settlement. Had the parties deferred resolution until a judgment on liability, the result could have been (1) a delay of the robust relief that will result from this settlement, (2) less robust relief despite a finding of liability, or (3) a finding that DDS is not liable at all. To avoid uncertainty and delay, the Agreement allows the parties to maintain their legal positions but set those aside to achieve relief that will address the underlying harms without the need to undertake the time- and resource-intensive process of reaching judgment on liability. Denial of liability provisions are standard in settlement agreements that are reached before any finding of liability by the court. *Miller v. Basic Rsch., LLC*, 750 F.3d 1173, 1178 (10th Cir. 2014) ("[P]arties regularly settle disputes without stipulating liability[.]"). Furthermore, even if the settlement was silent on liability, that would not be an admission by DDS. *Cf. Chao v. Emps. Res. Mgmt. Co., Inc.*, No. CV 02-12-S-EJL, 2006 WL 8445477, at *3 (D. Idaho Feb. 3, 2006), report and recommendation adopted, 2006 WL 8445478 (D. Idaho Feb. 24, 2006). This objection should be overruled.

Second, Mr. Argila objects to the Agreement based on his opinion that DDS and his sons'

1  regional center are not capable of fulfilling their obligations thereunder. ECF No. 117 at 2. This

2  is unfounded. DDS has already shown its willingness and capacity to fulfill the settlement terms

3  by implementing several terms even before the Agreement was approved.  *See* Gonzales FA

4  Decl. ¶ 5; Walter FA Decl. ¶¶ 4–5; Andrade FA Decl. ¶ 4. Furthermore, if the Agreement is

5  approved by the court, Plaintiffs will carefully monitor DDS's implementation. If problems

6  develop, the Agreement authorizes Plaintiffs to pursue dispute resolution procedures including

7  ultimately submitting the issue to the court. San Gabriel/Pomona Regional Center ("SG/PRC"),

8  which serves Mr. Argila's two sons, is not a party and does not have any direct obligations under

9  the Agreement. However, SG/PRC has already cooperated by creating a new Deaf-friendly

10  group home, where Cavan Argila now lives. *See* Weaver FA Decl. ¶ 11. This objection should be

11  overruled.

12        In his second objection, Mr. Argila also complains about the absence of a requirement to

13  provide specific accommodations. To the contrary, this is a strength of the Agreement, not a

14  flaw. Plaintiffs sought system-level action to ensure that Deaf consumers receive communication

15  assessments and services they need in order to receive the benefit of California's I/DD service

16  program. These assessments will provide a strong factual basis for requesting future

17  individualized accommodations, such as signing staff, a videophone or interpreters at meetings.

18  Thus, the relief provided by the Agreement will ensure that each class member receives the

19  opportunity to have an appropriate communication assessment the results of which are

20  incorporated in the consumer's individual plan. This relief reflects the diverse needs of Deaf

21  consumers because not all Deaf consumers communicate in ASL or require an ASL-certified

22  interpreter. Nothing in the Agreement prevents a Settlement Class Member from seeking a

23  certified interpreter in connection with their individual needs. Further, the Agreement reserves

24  the right of Non-Party Class members such as Mr. Argila's sons to request individual

25  accommodations and, if these are denied, to pursue these claims by requesting an administrative

26  hearing and even pursing a claim in court. This objection should be overruled.

27        Mr. Argila's third objection is that Class Counsel who will serve as monitors lack

28  concern for individual Deaf clients. ECF No. 117 at 3.  To the contrary, Class Counsel's concern

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   for individual Deaf clients is the very reason they initiated a multi-year, state-wide investigation

2   into the treatment of Deaf regional center consumers, and then pursued this litigation. *See e.g.*

3   Bird PA Decl. ¶¶ 3–4. Moreover, Class counsel have a professional obligation to obtain relief for

4   the Class to resolve the systemic violations at issue in this case. The Agreement achieves that,

5   and Class Counsel are prepared and qualified to monitor implementation. In addition, members

6   of the state's Deaf community are already involved in implementation of the Agreement as

7   members of the Steering Committee formed pursuant to the Implementation Plan. *See*

8   Implementation Plan § A.; Bird FA Decl. ¶¶ 5–6 & Ex A (letter from Committee Member K.

9   Stratton).

10         Mr. Argila's fourth objection is to an award of fees and costs to DRC because it also

11   receives state and federal funding. This objection should be overruled because Class Counsel are

12   entitled to an award of reasonable attorneys' fees and costs pursuant to federal law, as explained

13   more fully in Plaintiffs' Unopposed Motion for Fees and Costs, which is being filed concurrently

14   with this motion.

15         Finally, Mr. Argila objects to the Agreement because it does not include monetary

16   damages as relief.  However, Plaintiffs did not bring claims for monetary damages in the First

17   Amended Complaint – only injunctive relief. Most importantly, the Agreement expressly

18   protects the ability of Non-Party Class Members to pursue their own damage claims. The

19   Agreement states that the release of claims "does not apply to claims for damages or to any

20   individualized claim by a non-party Settlement Class Member regarding the provision of services

21   to the non-party Settlement Class Member, following the exhaustion of administrative

22   remedies." Agreement ¶ 21. Mr. Argila's sons are free to pursue their own damage claims in the

23   future, if appropriate. This objection should be overruled.

24   **VI.     CONCLUSION**

25         The settlement of this litigation achieves important benefits for Plaintiffs and all

26   Settlement Class Members. Plaintiffs respectfully request that the Court enter the attached

27   proposed order certifying the proposed class, overruling all objections, approving the Agreement,

28   and retaining jurisdiction.

DATED:  September 1, 2023                    Respectfully submitted,

DISABILITY RIGHTS ADVOCATES

Meredith J. Weaver
Rebecca Williford
*Attorneys for Plaintiffs*

DISABILITY RIGHTS CALIFORNIA

**s/ Melinda Bird**

Melinda Bird
William Leiner
Emily Ikuta
S. Lynn Martinez
*Attorneys for Plaintiffs*

**s/ Ricardo Enriquez**
RICARDO ENRIQUEZ
EMMANUEL S. SOICHET
MARYAM TOOSSI BERONA
Deputy Attorneys General

ROB BONTA
Attorney General of California
CHARLES J. ANTONEN
Supervising Deputy Attorney General
*Attorneys for Defendants*
*Department of Developmental Services*

**FILER'S ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I, Meredith J. Weaver, attest that concurrence in

the filing of this document has been obtained from each of the Signatories.

Meredith J. Weaver

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, THIRD FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644