1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**

11

**NORTHERN DISTRICT OF CALIFORNIA**

12

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| 13  LUGENE McCULLOUGH, by and through<br>his guardian ad litem Maya Klein; GINA<br>14  LAMBERTON, by and through her guardian<br>ad litem Jeffrey Taylor; JOSONIA BISHARA,<br>15  by and through her guardian ad litem Samond<br>Bishara on behalf of themselves and all others<br>16  similarly situated,<br>17             Plaintiffs,<br>18  v.<br>19  CALIFORNIA DEPARTMENT OF<br>DEVELOPMENTAL SERVICES, and<br>20  NANCY BARGMANN, in her official<br>capacity as Director of the California<br>21  Department of Developmental Services,<br>22             Defendants.<br>23 | **Case No. 3:20-cv-2958-SI**<br><br>**ORDER GRANTING FINAL APPROVAL<br>OF CLASS ACTION SETTLEMENT,<br>CERTIFYING SETTLEMENT CLASS**<br><br>Judge:    Susan Illston |

24

25

26

27

28

I.    **INTRODUCTION**

Before the Court is the Parties' Joint Motion for Final Approval of Class Action Settlement. Plaintiff Lugene McCullough, by and through his guardian *ad litem* Maya Klein, and Plaintiff Josonia Bishara, by and through her guardian *ad litem* Samond Bishara (collectively "Plaintiffs") filed this action in April 2020 alleging that Defendants California Department of Developmental Services ("DDS") and Nancy Bargmann in her official capacity as Director of DDS (collectively "Defendants") were violating federal and state laws by failing to ensure that Plaintiffs and other deaf consumers[1] receive equal access to DDS services in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. ECF No. 1 (Compl.); ECF No. 11 (First Am. Compl. ("FAC")). Plaintiffs filed a parallel action in Alameda Superior Court alleging violation of California Government Code section 11135 based on the same factual allegations as alleged in this action. *Compare* ECF No. 110-1 at 51–79[2] (Plfs.' State Court Compl.) *with* ECF No. 11 at 3–32. Plaintiffs allege that they and thousands of other deaf consumers are systematically denied interpreters and other aids and services that are necessary for effective communication and therefore are denied the benefits of Defendants' program that are available to hearing consumers. ECF No. 11. Defendants expressly deny these allegations and assert that they have always complied with the law and that deaf consumers received the legally required services. ECF No. 39 (Answer).

Following extensive negotiations that took place over more than two years with the assistance of Judge Jacqueline Scott Corley, the Parties have reached a proposed Class Settlement Agreement, ECF No. 110-1 at 16–47 (the "Agreement"), which is in the best interest of all Parties and satisfies the requirements of Federal Rule of Civil Procedure 23. The

---

[1] "Consumer" refers to an individual who has been found eligible to receive services pursuant to the Lanterman Developmental Disabilities Services Act ("Lanterman Act"). *See* Cal. Welf. & Inst. Code § 4512(a) (defining developmental disability under the Lanterman Act) & § 4512(d) (defining "consumer" as "a person who has a disability that meets the definition of developmental disability set forth in subdivision (a)").

[2] For ECF documents, page number citations refer to the ECF branded number in the upper right-hand corner of the page.

1  Agreement ensures, among other things, that deaf consumers will receive appropriate

2  communication assessments to identify necessary auxiliary aids and services for effective

3  communication in the provision of intellectual and developmental disability ("I/DD") services.

4          On April 28, this Court (a) conditionally certified the Settlement Class, appointed

5  Plaintiffs as Settlement Class representatives, and appointed Disability Rights Advocates and

6  Disability Rights California as Class Counsel; (b) granted preliminary approval of the terms and

7  conditions contained in the Agreement; (c) found that the proposed Agreement is fair and

8  warranted the dissemination of notice to the Settlement Class; (d) approved the proposed Class

9  Notice; (e) approved the plan for providing notice to the Settlement Class; and (f) scheduled a

10 Fairness Hearing for September 15, 2023. ECF No. 115 at 11–14 (Order Granting Prelim.

11 Approval).

12         The Parties now ask that the Court enter an order (1) certifying the proposed Settlement

13 Class and appointing Plaintiffs as Settlement Class Representatives and Plaintiffs' counsel as

14 Class Counsel; (2) overruling the Objections submitted by Mr. Carl Argila (ECF Nos. 117 &

15 118); (3) granting final approval of the Agreement; and (4) retaining jurisdiction during the term

16 of the Agreement for the purpose of enforcement thereof.

17         Having presided over the proceedings in the above-captioned action and having reviewed

18 all of the arguments, pleadings, records, and papers on file, this Court finds and orders as

19 follows:

20 **II.    FINDINGS**

21         At final approval, the Court first "determines that notice to the class members was

22 accomplished in the manner prescribed by the settlement and as approved by the Court at the

23 preliminary approval stage." *Cancilla v. Ecolab, Inc.*, No. 12-cv-03001-JD, 2016 WL 54113, at

24 *3 (N.D. Cal. Jan. 5, 2016). The Court then analyzes whether it should confirm final certification

25 of any class preliminarily certified for settlement. *Rosado v. Ebay Inc.*, No. 5:12-cv-04005-EJD,

26 2016 WL 3401987, at *1-2 (N.D. Cal. June 21, 2016). Finally, "[h]aving already completed a

27 preliminary examination of the agreement, the court reviews it again, mindful that the law favors

28 the compromise and settlement of class action suits." *Id.* (citing *Churchill Village. LLC v. Gen.*

*Elec.*, 361 F.3d 566,576 (9th Cir. 2004)). The Court should "reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Just.*, 688 F.2d at 625. Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

## A. <u>Notice was Effectuated to the Settlement Class.</u>

Class Counsel created and maintained Class Notice websites where the Class Notice was available in English, Spanish, and American Sign Language ("ASL") from at least June 27, 2023 to the present. Weaver Decl. Supp. Final Approval ("Weaver FA Decl.") ¶¶ 4–6; Bird Decl. Supp. Final Approval ("Bird FA Decl.") ¶¶ 3–4. The proposed Agreement, Motion for Preliminary Approval, and Order Granting Preliminary Approval were also posted on Class Counsel's Notice websites, consistent with District's *Procedural Guidance for Class Action Settlements*. Weaver FA Decl. ¶ 4–6; Bird FA Decl. ¶¶ 3–4. Class Counsel responded to Settlement Class Members requests for information and clarification. Weaver FA Decl. ¶¶ 8–9; Decl. Emily Ikuta Supp. Joint Mot. Final Approval ("Ikuta FA Decl.") ¶ 3.

On June 26, 2023, DDS mailed the Class Notice to class members in English and Spanish and it reports not having received any notices returned undeliverable. Decl. Kristy Boyes Supp. Joint Mot. Final Approval ("Boyes FA Decl.") ¶ 5. In addition, the contents of the Class Notice and the requirements for filing an objection were explained to the three class members who are conserved by the Director of DDS. Decl. Lisa Gonzales Supp. Joint Mot. Final Approval ("Gonzales FA Decl.") ¶ 4. Lisa Gonzales, the DDS Statewide Deaf Access Specialist, undertook these efforts by personally visiting each of the three conserved class members. *Id*. The support staff of each conserved individual, a representative from DDS's Conservatorship Liaison, and a representative from the State Council on Developmental Disabilities also attended. *Id*.

In addition, on April 4 and 5, 2023, DDS's counsel sent a notice to the Attorney General of the United States; the General Counsel for the California Health & Human Services Agency,

1   which is the agency that oversees DDS in compliance with the Class Action Fairness Act

2   ("CAFA"), 28 U.S.C. § 1715; and the Attorney General of California. ECF No. 112 at 2 (Decl.

3   Ricardo Enriquez Supp. Defs' CAFA Notice ¶ 4).

4        This Court finds that the Parties distributed notice to the Settlement Class in a manner

5   sufficient "to alert those with adverse viewpoints to investigate and to come forward and be

6   heard," *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (internal quotations omitted),

7   and in a manner and form that meets the requirements of due process and Federal Rules of Civil

8   Procedure 23(c)(2) and 23(e). Every Settlement Class Member received the mailed Class Notice

9   and all had access to Class Counsel's Notice webpages.

10       **B.**  **The Settlement Class meets the requirements of Rule 23(a) and (b)(2) of the**
                 **Federal Rules of Civil Procedure**

11

12        The Court now confirms its previous determination that each of the requirements of Rule

13   23(a) and 23(b)(2) for class certification are satisfied for the purposes of the proposed Agreement

    and Settlement Class. *See* ECF No. 115 at 3–7.

14

15        To support class certification, a court must find each of Rule 23(a)'s four requirements

16   has been satisfied: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of

    representation. *Amchem Prods., Inc.*, 521 U.S. at 614. In addition to these requirements, "parties

17

18   seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or

    (3)." *Id.* The applicable provision here is subsection (2), which "permits class actions for

19

20   declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on

    grounds generally applicable to the class.' " *Id.* (quoting Fed. R. Civ. P. 23(b)(2)).

21

22        Here, the conditionally certified Settlement Class, as stipulated by the Parties, is defined

    as:

23

24            All persons eligible for services pursuant to the Lanterman
              Developmental Disabilities Services Act whose response to

25           question 60 within DDS's "Client Development Evaluation Report
              (CDER) Diagnostic Element" is "2-Severe hearing loss," "3-

26           Profound hearing loss," or "9-Hearing loss suspected, severity
              undetermined;" and whose response to question 61 within DDS's

27           CDER Diagnostic Element is "2-Severe hearing loss," "3-Profound
              hearing loss," "8-Correction not possible," or "9-Hearing not

28           corrected."

1    Agreement ¶¶ 3, 6, 22. The Court now finds that the Settlement Class meets the requirements of

2    Rule 23(a) and Rule 23(b)(2), as discussed below, and it is hereby certified.

3                            1.    The Settlement Class is Sufficiently Numerous

4            Rule 23(a) requires that a settlement class be "so numerous that joinder of all members is

5    impracticable." Fed. R. Civ. P. 23(a)(1). DDS's data indicates that approximately 10,000

6    individuals meet the class definition. ECF No. 110-5 at ¶ 6. Joinder of all 10,000 members in a

7    single proceeding would be impracticable, and the Court confirms its finding that the Settlement

8    Class is sufficiently numerous.

9                            2.    The Settlement Class Satisfies Commonality

10           The second element of Rule 23(a) requires the existence of "questions of law or fact

11   common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied where the plaintiff

12   alleges the existence of "a common contention" such that "determination of its truth or falsity

13   will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-*

14   *Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The critical question is whether class

15   members have suffered the same injury, such that their claims "depend upon a common

16   contention . . . [that] is. capable of classwide resolution." *Id.*

17           Plaintiffs challenged Defendants' alleged state-wide policies and practices that apply to

18   every member of the Settlement Class, including but not limited to: failing to ensure that deaf

19   consumers receive appropriate communication assessment; allowing IPP planning meetings to be

20   conducted without auxiliary aids and services necessary for deaf consumers to communicate

21   effectively; and failing to take any reasonable actions to ensure that California's intellectual and

22   developmental disability ("I/DD") services are accessible to deaf consumers. FAC ¶¶ 61–69, 73–

23   74, 77–89. Each Settlement Class Member is similarly impacted by Defendants' statewide

24   policies and procedures, and the legality of these actions and inactions is a question "capable of

25   classwide resolution." *Wal-Mart*, 564 U.S. at 350.

26           The Court confirms its finding that there are questions of law and fact common to the

27   Settlement Class.

28

1

### 3. Plaintiffs' Claims are Typical of the Settlement Class.

2      The third element of Rule 23(a) requires that the claims of the representative parties are

3 typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). Rule 23(a)'s typicality requirement is

4 met so long as the named plaintiffs' claims are "reasonably coextensive with those of absent

5 class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685

6 (9th Cir. 2014) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998),

7 *overruled on other grounds by Wal-Mart*, 564 U.S. at 338).

8      Though the extent of their injuries may differ, Plaintiffs allege that every class member is

9 affected by the same challenged course of conduct on the part Defendants. The legal theories that

10 Plaintiffs would have relied on to redress this harm apply equally to each member of the

11 Settlement Class, and the systemic relief Plaintiffs have achieved—like new communications

12 assessment procedures, a statewide Steering Committee, and hiring of an Equity Specialist at the

13 state level and Deaf Services Specialists at the regional level—will benefit that class as a whole.

14      The Court confirms its finding that Plaintiffs' claims are typical of the claims of the

15 Settlement Class that they seek to represent for the purpose of settlement.

16

### 4. Plaintiffs and Class Counsel are Adequate Representatives.

17      The final element of Rule 23(a) requires that "the representative parties will fairly and

18 adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Settlement Class is

19 adequately represented so long as "the named plaintiffs and their counsel [do not] have any

20 conflicts of interest with other class members, and . . . [will] prosecute the action vigorously on

21 behalf of the class." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000), as

22 amended (June 19, 2000).

23      Here, Plaintiffs have shown that no conflicts exist between Plaintiffs and other Settlement

24 Class Members. The Parties' Agreement provides the same injunctive relief for Plaintiffs and

25 every member of the proposed Settlement Class; and Plaintiffs have vigorously represented the

26 class and pursued this outcome on behalf of the Settlement Class. Plaintiffs' counsel is

27 experienced in litigating class actions and impact cases involving disability rights violations

28 including other class actions challenging government policies and actions on behalf of

1    individuals who are deaf.

2    Thus, the Court finds that Plaintiffs McCullough and Bishara, by and through their

3    guardians *ad litem*, have fairly and adequately represented the interest of the Settlement Class

4    and will continue to do so. Accordingly, the Court hereby appoints Plaintiffs McCullough and

5    Bishara, by and through their guardians *ad litem*, as representatives of the Settlement Class. The

6    Court further appoints Plaintiffs' counsel, Disability Rights Advocates and Disability Rights

7    California, as Class Counsel.

8    5.    The Settlement Class Satisfies Rule 23(b)(2).

9    Rule 23(b)(2) requires that the defendant "has acted or refused to act on grounds that

10    apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

11    appropriate respecting the class as a whole." This rule is "almost automatically satisfied in

12    actions primarily seeking injunctive relief." *Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132,

13    151 (N.D. Cal. 2015) (quoting *Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501,

14    520 (N.D. Cal. 2011)).

15    Here, Plaintiffs challenge DDS policies and practices applicable to all Settlement Class

16    Members and seek injunctive relief. Under the proposed Agreement, every Settlement Class

17    Member will be offered an appropriate communication assessment, have the benefit of new Deaf

18    Services Specialists at their regional centers and at the statewide level, and enjoy increased

19    access to programs including a new housemate matching program. ECF No. 110-1 at 37–40

20    (Implementation Plan §§ B.1, B.2.a, B.2.b, B.3). Furthermore, the Agreement does not release

21    non-party Settlement Class Members' potential claims for monetary damages or their ability to

22    seek individualized relief through the administrative process.

23    The Court finds that the Settlement Class satisfies Rule 23(b)(2). Thus, certification is

24    granted.

25    **C.    The proposed Settlement Agreement is Fair, Reasonable, and Adequate**

26    In making a final fairness determination, Rule 23 requires courts to consider: (1) whether

27    the class was adequately represented; (2) whether the proposed settlement was negotiated at

28    arm's length; (3) whether the relief provided for the class is adequate, taking into account, in

---

relevant part, the costs, risks, and delay of trial and appeal and the terms of any proposed award

of attorneys' fees; and (4) whether the proposal treats class members equitably relative to one

another. Fed. R. Civ. P. 23(e)(2); *see also Lane*, 696 F.3d at 819 (listing *Hanlon* factors

considered in the Ninth Circuit). Having considered these factors, the Court finds that the

Settlement Agreement is fair, reasonable and adequate.

1.   <u>Plaintiffs and their Counsel Have Adequately Represented the Settlement</u><br><u>Class.</u>

In determining whether a class has been adequately represented, courts consider the same

"adequacy of representation" questions that are relevant to class certification. *See In re MyFord*

*Touch Consumer Litig*., No. 13-cv-03072-EMC, 2019 WL 1411510, at *8 (N.D. Cal. Mar. 28,

2019); *see also O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2019 WL 1437101, at *6

(N.D. Cal. Mar. 29, 2019). Adequate representation of counsel is generally presumed in the

absence of contrary evidence. *Californians for Disability Rights, Inc. v. Ca. Dep't of Transp.*,

249 F.R.D. 334, 349 (N.D. Cal. 2008); *see also* William B. Rubenstein, 1 *Newberg and*

*Rubenstein on Class Actions* § 3:55 (6th ed. 2022).

Plaintiffs and their counsel have demonstrated that they do not have any known conflicts

of interest with other Settlement Class Members and have vigorously prosecuted the action.

Having reviewed the Agreement and all submissions, the Court finds that Plaintiffs and their

counsel have adequately represented the Settlement Class and that this factor weighs in favor of

final approval.

2.   <u>The Proposed Settlement was Negotiated at Arm's Length.</u>

The Court finds that the Agreement was negotiated at arm's length. While no

presumption of fairness attaches to settlements achieved through arms-length negotiations, *see*

*Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019), such negotiations do

weigh in favor of approval.[3] Fed. R. Civ. P. 23(e)(2)(B). The proposed Agreement is the product

---

[3] The considerations encompassed by revised Rule 23(e)(b)(2)(A)–(B) "overlap with certain
*Hanlon* factors, such as the non-collusive nature of negotiations, the extent of discovery
completed, and the stage of proceedings." *In re Extreme Networks, Inc. Sec. Litig*., No. 15-cv-

1   of over two years of arms' length negotiations, including eight settlement conferences before

2   Judge Corley, numerous settlement meetings between the Parties, and dozens of written

3   proposals exchanged. ECF Nos. 50, 54, 58, 60, 67, 79, 89, 92 (Min. Entries re Settlement

4   Confs.); ECF No. 110-1 at ¶¶ 16–19. As the Advisory Committee has recognized, "the

5   involvement of a neutral or court-affiliated mediator or facilitator . . . may bear on whether

6   [negotiations] were conducted in a manner that would protect and further the class interests."

7   Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2). The Court finds that

8   the Agreement is the product of "serious, informed, non-collusive negotiations" conducted by

9   experienced counsel over an "extended period of time." *In re Tableware Antitrust Litig.*, 484 F.

10  Supp. 2d 1078, 1079–80 (N.D. Cal. 2007). This factor weighs in favor of final approval.

> 3.   The Proposed Agreement Provides Significant Relief to Plaintiffs and the
>       Settlement Class

13          Rule 23(e)(2)(C) requires courts to consider whether "the relief provided for the class is

14  adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the

15  effectiveness of any proposed method of distributing relief to the class, including the method of

16  processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

17  including timing of payments; and (iv) any agreement required to be identified under Rule

18  23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

19          Here, the Parties have shown that the Agreement fully addresses the issues that led

20  Plaintiffs to file this lawsuit. Deaf consumers will receive appropriate communication

21  assessments, which will ensure that regional center staff and vendors are aware of their abilities,

22  preferences, and need for auxiliary aids and services. New and expanded programs for deaf

23  consumers, including housemate matching, will be given priority for new funding, so that deaf

24  consumers will have more appropriate programs from which to choose. Deaf Services Specialists

25  at every regional center will be available to support the development of new resources, staff

26  training and completion of the communication assessments. DDS will provide training for staff

27

28  04883-BLF, 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019) (citing *Hanlon*, 150 F.3d at
    1026).

who work with deaf consumers and a new webpage with resources on increasing access for deaf

consumers. Once implemented, these changes will resolve the problems that led to the lawsuit.

In deciding whether to agree to this settlement, Plaintiffs considered the possibility that

DDS would prevail in the litigation, and the case would end with no benefits to the class. ECF

No. 110-1 at ¶¶ 38–40; ECF No. 110-2 at ¶ 16. There is no guarantee that Plaintiffs would

prevail, and any litigated result would require significant time and resources for the Court to

resolve these disputes. Plaintiffs considered the fact that the settlement provided additional

benefits—such as the engagement of regional center representatives in the Steering Committee

and the hiring of Deaf Services Specialists at every regional center—that would greatly enhance

the prospective relief. ECF No. 110-3 at ¶¶ 15–17; ECF No. 110-4 at ¶¶ 10–14.

Subject to this Court's approval, Defendants have agreed to pay Plaintiffs' counsel

$1,300,000 to cover all attorneys' fees and costs, including those incurred for monitoring

implementation of the Agreement. Agreement ¶ 43. This term was negotiated after all

substantive settlement terms pertaining to injunctive relief had been resolved, and the total

amounts to a significant reduction to Plaintiffs' lodestar.

The Court finds that all relevant factors weigh in favor of final approval.

4.   The Parties' Agreement Treats All Settlement Class Members Equitably

"The Court must next examine whether the Settlement Agreement provides preferential

treatment to any class member." *Uschold*, 333 F.R.D. at 170 (internal quotation and citation

omitted). The Court finds that the Agreement will provide the same relief to all Settlement Class

Members, and the only distinction between treatment of the Plaintiffs and other Settlement Class

Members is that the Plaintiffs will release monetary claims while other Settlement Class

Members will not. Because the proposed Agreement treats Plaintiffs and all other Settlement

Class Members equitably relative to each other, the Court finds that this factor weighs in favor of

final approval.

### III.    THE OBJECTIONS RECEIVED BY THE COURT ARE OVERRULED

The deadline for mailing objections to the Court was August 16, 2023. Settlement Class

Members had fifty (50) days to object between the Class Notice deadline (June 27, 2023) and the

1  Objection deadline (August 16, 2023), thus the Notice Period complied with this District's

2  *Procedural Guidance for Class Action Settlements*.

3          The Court received two objections via mail, which were filed on the record at ECF Nos.

4  117 and 118. Both of these objections were submitted by Carl A. Argila on behalf of his adult

5  sons Gerardo and Cavan Argila. Mr. Argila's objection to DDS's denial of liability is overruled.

6          Mr. Argila objects to DDS's denial of liability. ECF No. 117 at 1–2. The Court will not

7  reject the Parties' settlement agreement on this basis. Had the parties deferred resolution until a

8  judgment on liability, the result could have been (1) a delay of the robust relief that will result

9  from this settlement, (2) less robust relief despite a finding of liability, or (3) a finding that DDS

10  is not liable at all. To avoid uncertainty and delay, the Agreement allows the parties to maintain

11  their legal positions but set those aside to achieve relief that will address the underlying harms

12  without the need to undertake the time- and resource-intensive process of reaching judgment on

13  liability. Denial of liability provisions are standard in settlement agreements that are reached

14  before any finding of liability by the court. *Miller v. Basic Rsch., LLC*, 750 F.3d 1173, 1178

15  (10th Cir. 2014) ("[P]arties regularly settle disputes without stipulating liability[.]").

16  Furthermore, even if the settlement was silent on liability, that would not be an admission by

17  DDS. *Cf. Chao v. Emps. Res. Mgmt. Co., Inc.*, No. CV 02-12-S-EJL, 2006 WL 8445477, at *3

18  (D. Idaho Feb. 3, 2006), report and recommendation adopted, 2006 WL 8445478 (D. Idaho Feb.

19  24, 2006). Mr. Argila's first objection is overruled.

20          **D.  <u>Mr. Argila's objection to the Agreement based on his DDS's alleged incapacity to fulfill its terms is overruled.</u>**

21

22          Mr. Argila objects to the Agreement based on his opinion that DDS and his sons'

23  regional center are not capable of fulfilling their obligations thereunder. ECF No. 117 at 2.

24  However DDS has already shown its willingness and capacity to fulfill the settlement terms by

25  implementing several terms even before the Agreement was approved. *See* Gonzales FA Decl.

26  ¶ 5; Walter FA Decl. ¶¶ 4–5; Andrade FA Decl. ¶ 4. Furthermore, if the Agreement is approved

27  by the court, Plaintiffs will carefully monitor DDS's implementation. If problems develop, the

28  Agreement authorizes Plaintiffs to pursue dispute resolution procedures including ultimately

1    submitting the issue to the court. San Gabriel/Pomona Regional Center ("SG/PRC"), which

2    serves Mr. Argila's two sons, is not a party and does not have any direct obligations under the

3    Agreement. SG/PRC has already cooperated by creating a new Deaf-friendly group home, where

4    Cavan Argila now lives. *See* Weaver FA Decl. ¶ 11. Mr. Argila's second objection is overruled.

### E.  Mr. Argila's objection to the Agreement based on the absence of a requirement to provide specific accommodations is overruled.

6        In his second objection, Mr. Argila also objects to the absence of a requirement to

7    provide specific accommodations. The Court agree with the Parties that this is a benefit of the

8    Agreement geared toward addressing systemic barriers rather than individual violations.

9    Plaintiffs sought system-level action to ensure that Deaf consumers receive communication

10   assessments and services they need in order to receive the benefit of California's I/DD service

11   program. These assessments will provide a strong factual basis for requesting future

12   individualized accommodations, such as signing staff, a videophone or interpreters at meetings.

13   Thus, the relief provided by the Agreement will ensure that each class member receives the

14   opportunity to have an appropriate communication assessment the results of which are

15   incorporated in the consumer's individual plan. This relief reflects the diverse needs of Deaf

16   consumers because not all Deaf consumers communicate in ASL or require an ASL-certified

17   interpreter. Nothing in the Agreement prevents a Settlement Class Member from seeking a

18   certified interpreter in connection with their individual needs. Further, the Agreement reserves

19   the right of Non-Party Class members such as Mr. Argila's sons to request individual

20   accommodations and, if these are denied, to pursue these claims by requesting an administrative

21   hearing and even pursing a claim in court. This objection is overruled.

### F.  Mr. Argila's objection to Class Counsel serving as monitors of the Agreement is overruled.

24       Mr. Argila objects to Class Counsel serving as monitors based on their alleged lack

25   concern for individual Deaf clients. ECF No. 117 at 3. To the contrary, Class Counsel's concern

26   for individual Deaf clients is evident based on the extensive time and resources they have

27   invested in this matter over many years and the robust relief that they achieved for the Settlement

28   Class. Moreover, Class counsel have a professional obligation to represent the Class during

1  implementation and are qualified to do so. In addition, members of the state's Deaf community

2  are already involved in implementation of the Agreement as members of the Steering Committee

3  formed pursuant to the Implementation Plan. *See* Implementation Plan § A.; Bird FA Decl. ¶¶ 5–

4  6 & Ex A (letter from Committee Member K. Stratton). Mr. Argila's third objection is overruled.

### G.  Mr. Argila's objection to an award of fees and costs to Disability Rights California is overruled.

Mr. Argila objects to an award of fees and costs to DRC because it also receives state and federal funding. As discussed in the Court's Order Granting Plaintiffs' Unopposed Motion for Fees and Costs, Class Counsel are entitled to an award of reasonable attorneys' fees and costs pursuant to federal law. The receipt of funding from other sources during the interim to support the DRC's work does not negate Plaintiffs' right to recover their reasonable fees and costs. Mr. Argila's fourth objection is overruled.

### H.  Mr. Argila's objection to the Agreement's lack of monetary damages is overruled.

Finally, Mr. Argila objects to the Agreement because it does not include monetary damages as relief.  However, Plaintiffs did not bring claims for monetary damages in the First Amended Complaint – only injunctive relief. Most importantly, the Agreement expressly protects the ability of Non-Party Class Members to pursue their own damage claims. The Agreement states that the release of claims "does not apply to claims for damages or to any individualized claim by a non-party Settlement Class Member regarding the provision of services to the non-party Settlement Class Member, following the exhaustion of administrative remedies." Agreement ¶ 21. Mr. Argila's sons are free to pursue their own damage claims in the future, if appropriate. Mr. Argila's fifth objection is overruled.

## IV.  ORDER

NOW THEREFORE, IT IS HEREBY ORDERED:

1.      Unless otherwise stated, the terms in this Order have the meaning set forth in the Agreement.

2.      The Court hereby certifies the Settlement Class defined in the Agreement pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2).

1       a)   The Court hereby appoints Plaintiff Lugene McCullough, by and through his

2          guardian *ad litem*, Maya Klein; and Plaintiff Josonia Bishara, by and through her

3          guardian *ad litem*, Samond Bishara as Settlement Class representatives.

4       b)   The Court hereby appoints Disability Rights Advocates and Disability Rights

5          California, Plaintiffs' attorneys of record, as Class Counsel.

6   3.     Objector Carl A. Argila's objections are OVERRULED.

7   4.     The Parties' Joint Motion for Final Approval of the Agreement, attached as

8 Exhibit 1 to the Declaration of Meredith J. Weaver in Support of the Parties' Joint Motion for

9 Preliminary Approval (ECF No. 110-1) is GRANTED.

10   5.     The Court will retain jurisdiction of this matter during the term of the Agreement

11 for the purpose of enforcement thereof.

12

13 **IT IS SO ORDERED.**

14

15 Dated: September 15, 2023 _____

                               Honorable Susan Illston

16                              United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28